## In re Gilbert.

(Decided June 14, 1938.)

188

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for complainants.

M. E. GILBERT pro se.

OPINION BY CHIEF JUSTICE STITES—Confirming report of Bar Commissioner and disbarring respondent.

This proceeding is before us on a report of the Board of Bar Commissioners, based on a complaint filed by the McCracken County Bar Association, finding the respondent, M. E. Gilbert, guilty of unprofessional conduct under two counts and recommending that he be disbarred from the practice of law in this State. Respondent has filed no brief in his own behalf in this Court, but has contented himself with filing an answer to the charges before the Board of Bar Commissioners and filing a special and general demurrer in this Court,

on the ground that the Court is without jurisdiction of the subject matter and the McCracken County Bar Association is without legal authority to prefer charges. The right of this Court to try respondent has been repeatedly upheld. Com. ex rel. Ward v. Harrington, 266 Ky. 41, 98 S. W. (2d) 53; In re Sparks, 267 Ky. 93, 101 S. W. (2d) 194; Kenton County Bar Association v. Murphy, 272 Ky. 617, 114 S. W. (2d) 722. See also, Com. ex rel. Buckingham v. Ward, 267 Ky. 627, 103 S. W. (2d) 117; Sessmer v. Com., 268 Ky. 127, 103 S. W. (2d) 647; Louisville Bar Association v. Clarke, 270 Ky. 315, 109 S. W. (2d) 619; Louisville Bar Association v. Yonts, 270 Ky. 503, 109 S. W. (2d) 1186; In re Stump, 272 Ky. 593, 114 S. W. (2d) 1094. So far as the Bar Association is concerned, it "was but performing its duty to bring to the court's attention the fact that a member of the bar was believed to be guilty of unprofessional conduct meriting censure, suspension, or disbarment. Thornton on Attorneys at Law, section 869," In re Stump, supra (page 1099). This is not in fact an adversary proceeding, but is in the nature of an inquiry into the qualifications of respondent to continue in the practice of law. Com. ex rel. Ward v. Harrington, supra; Bar Association of City of Boston v. Casey, 211 Mass. 187, 97 N. E. 751, 39 L. R. A., N. S., 116, Ann. Cas. 1913A, 1226. It is unimportant therefore, whether or not the McCracken County Bar Association possesses the legal capacity to maintain a suit. It is quite immaterial who raises the question as to respondent's qualifications once the machinery of investigation is set in motion. Indeed, the Court has itself instituted investigations on more than one occasion. It is the Court, and not the complainant, that controls the course of the proceedings once they are commenced.

The first charge against respondent is based upon his conviction on a charge of obstructing justice. The record in that proceeding is before us and it indicates that respondent had been employed as an attorney by a Mrs. Furnish to represent her in a divorce suit in the McCracken Circuit Court. Respondent took the deposition of Mrs. Furnish in his own office and before his own stenographer, who had just been appointed as an examiner. This was the first work of this nature ever done by the stenographer, and it appears that respondent caused her to add certain questions and answers to the testimony of his client, which, while not directly af-

fecting the issues in the divorce proceeding, did reflect upon another attorney. Both Mrs. Furnish and the stenographer testified that the statements were not made as they appeared in the deposition, and respondent was found guilty by a jury, and he was fined $75. It is difficult to conceive of a more serious professional offense than the destruction of the verity of an examiner's certificate to depositions. Unless the courts can rely on the accuracy of depositions, the administration of justice would be hopelessly bogged down. The examiner is a sworn officer of the court, and his or her certificate imports all of the fidelity and exactitude of the sworn testimony of the witness in open court. The proof here shows the inexperience of the examiner before whom the deposition of Mrs. Furnish was taken and her reliance upon the instructions of her employer. Respondent denies the truth of the charge, but he is contradicted by both Mrs. Furnish and the examiner, and has been found guilty by the verdict of a jury. Even if we accept his own version of what transpired, it appears that he lacked any appreciation of the impropriety of taking the testimony of a witness in his own office, before his own stenographer in an uncontested divorce case and practically putting the words into the mouth of the witness. Compare, in the Matter of Eldridge, 82 N. Y. 161, 37 Am. Rep. 558.

The second charge against respondent is abundantly proven. He was employed as the attorney for the plaintiff in a divorce case in the McCracken Circuit Court, which was filed in 1931. After proof was taken and the case submitted, the chancellor noted on the record, the original of which is before us, that a divorce was not authorized because there was no copy of the notice to take depositions in the record; the petition stated that the separation occurred in Illinois, while the proof indicated that it occurred in Kentucky, and the petition did not show the date of separation, although the proof indicated that it had occurred in less than a year before the suit was filed. The plaintiff in the case had apparently moved to another State, and her father called on respondent in September, 1932, to inquire as to the status of the divorce proceeding. Respondent thereupon gave him what purported to be the copy of a judgment of divorce dated September 26, 1932, and marked, "A copy attest, M. E. Gilbert, attorney." In October, 1932, the plaintiff, on the faith of

the supposed judgment, remarried. Thereafter, in December, 1935, more than three years later, respondent cured the other defects in the divorce record and filed an amended petition, and, pursuant to this amendment, obtained judgment of divorce on the 6th of January, 1936.

Respondent seeks to excuse himself of this charge on the ground that he expected to perfect the record promptly after he gave out the purported copy of the divorce judgment, but that he took sick during the night following the day when this copy was delivered, and was sick for some two or three weeks, and upon his return to the office he forgot the case until it was called to his attention in 1935. Manifestly, this is no excuse whatever for the misrepresentation to his client or the wrongful giving out of a purported judgment that had never been entered, as though it was the judgment of a court.

Respondent also seeks to excuse his conduct on the ground that his client in the meantime had separated from her second husband and was therefore not seriously inconvenienced by the fact that her second marriage was void and bigamous. This fortuitous circumstance presents no palliation of the original wrong.

Mere inattention to a client's cause, together with the acceptance of a fee and the rendition of no service therefor, has been held to be a sufficient ground for disbarment. Cases on this subject are collected in a note in 69 A. L. R. at page 705. In the proceeding before us, respondent admits that he took no step to perfect the record and obtain the divorce for three years after he falsely represented that the divorce had been obtained. The measure of good faith required of an attorney in dealing with his clients is far higher than that exacted in the ordinary business transaction. The relationship is one of trust and confidence, and it is the duty of the courts to preserve it upon a high plane of moral responsibility for the protection of the public. Respondent must not only have known of the untruth of the representation here made, but also he is bound to have anticipated the events that followed, if he was not entirely reckless in his conduct. In either event, he has been guilty of an offense against the fundamental precepts of the bar. Good faith and fair dealing are expected of a lawyer in his contacts with his adversaries.

They are essential elements in his contacts with his clients.

No argument should be necessary to demonstrate that respondent has, by his actions, shown himself to be unfit to be a member of the bar. Entirely aside from the moral culpability of his offenses, no court could tolerate such practices without bringing itself into disrepute and, itself, assuming responsibility for such conduct.

It is ordered that the report of the Board of Bar Commissioners be and it is hereby confirmed, and that the respondent, M. E. Gilbert, be and he is hereby disbarred from the further practice of law in this Commonwealth.

Whole court sitting.