## Harrison v. Commonwealth ex rel. Kash.

June 17, 1947.

Rehearing denied September 26, 1947.

E. B. Beatty, Judge.

Shumate and Shumate for appellant.

W. L. Kash, S. H. Rice, J. R. Llewellyn and Hector Johnson for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

This appeal is from a judgment disbarring Allen Harrison from the practice of law. The proceeding was instituted in the circuit court by a bill of information filed by the Commonwealth's Attorney. Special and general demurrers to the bill were overruled following which an answer was filed which traversed the allegations of the bill and pleaded the statute of limitations.

For reversal of the judgment it is contended:

1. The special demurrer should have been sustained.

2. The general demurrer should have been sustained.

3. Incompetent evidence was admitted.

4. The judgment was contrary to law and the evidence.

1. The basis for the special demurrer is that under section 484 of the Civil Code of Practice the Commonwealth's Attorney may only institute actions in the nature of quo warranto proceedings which govern the right of county officials to hold office, and all other such proceedings, including this one, must be instituted by the Attorney General. Obviously there is no merit in this

contention because, as we said in the case of In re Gilbert, 274 Ky. 187, 118 S. W. 2d 535, it is immaterial who raises the question as to an attorney's qualifications once the machinery of investigation is set in motion. The court itself had the power to institute the investigation, and courts have done so on more than one occasion. It is the court, and not the complainant, that controls the course of the proceeding once it has commenced.

2. It is argued that the bill of information does not charge that Harrison was not admitted to the practice of law. The bill charges that the law license held by Harrison is a forgery, was forged by him, and that he is actively engaged in the practice of law without having been legally admitted to the practice. Certainly this is sufficient to call the court's attention to the charge. Actually this is not an adversary proceeding, but is an inquiry into the qualifications of Harrison to continue the practice of law. In re Gilbert, supra, and the authorities therein cited.

3. It is claimed that none of the testimony in the record is material to the issue because of the plea of the statute of limitations. KRS 30.080, which was repealed by the legislature, Acts 1946, chapter 207, section 4, provided that if any license is procured by fraud, the Court of Appeals may revoke it at any time within two years of the date it was issued. In answer to this contention it is sufficient to merely point out that the charge here is that the license was forged. If this be true there was never any license to be revoked, and the argument of appellant is therefore untenable. However, since an attorney is an officer of the court, the court has the inherent power to investigate and punish a member of the bar who has been found to be guilty of unprofessional conduct meriting censure, suspension or disbarment. There can be no limitation on this right and duty of the courts.

4. Harrison testified that he was admitted to the practice of law following an examination in the Owsley Circuit Court in March 1918, and that he was examined on that occasion by E. E. Hogg, H. C. Eversole, members of that bar, and J. C. Eversole who was then judge of that court. He said that following this examination he received a certificate showing that he was duly li-

censed to practice law and that the certificate was signed by John C. Eversole, E. E. Hogg, and H. C. Eversole.

Apparently Harrison was only seventeen or eighteen years old in 1918, but he said he procured a certificate from the County Judge of Jackson County stating that he was twenty-one years old, which certificate was dated March 17, 1918. He did not engage in the practice of law until some time after 1930, unless, as he says, he practiced for a short period in 1926. He enrolled as a student in the Law Department of LaSalle Extension University in 1927, and was issued a certificate by that organization in 1930. He has held public office, having been elected justice of the peace and tax commissioner of Jackson County, and since 1933 or 1934 has actively engaged in the practice of law at McKee, where he has built up a substantial practice. He claims that this proceeding was instituted because of his connection with a local political faction, and as a direct result of the personal animosity between him and Hector Johnson, who is also an attorney at McKee and who appears to be the main witness and moving force behind the present proceeding.

There is ample evidence to show that there is a political fight between two factions over the election of the councilmen of McKee, with Harrison participating on one side and Johnson on the other. There is also evidence to indicate the hostility of Johnson and many of the other witnesses who testified against Harrison. Much of the evidence in the record was produced for the purpose of showing that this situation existed, and the reasons for its existence. However, it is not necessary to detail this type of evidence since the only question in the case is whether or not the license held by Harrison is a forgery.

The clerk of the Jackson County Court produced Order Book #9, and testified that at the bottom of page 111 he found the following order:

"March 17, 1918. I, W. F. Johnson, Judge of the Jackson County Court, do certify that I am acquainted with the applicant Allen Harrison, of Brazil, Kentucky, and know him to be a man over twenty-one years of age, of honesty, probity and good moral character." Signed: "W. F. Johnson, J. J. C. C."

The clerk said that this particular page is headed "March Term, First Day, 17th Day of March 1919."

This same witness produced official records containing the census report of the age of Harrison. The record for 1916 shows that Harrison was born October 22, 1901. The record for 1918 shows that he was born October 22, 1896. The clerk testified that the 1918 record has the appearance of having been changed, and that there has been an erasure of the figures which originally appeared.

John Fowler was County Court Clerk of Jackson County for twelve years beginning in 1922, and was deputy clerk for seven or eight years before that, having been deputy clerk in 1918 and 1919. He examined Order Book #9 at page 111 and said that he does not believe the signature of W. F. Johnson is Johnson's true signature, and that it appears different from Judge Johnson's signature at other places in the Order Book.

C. A. Bowman testified he was Clerk of the Owsley Circuit Court in 1937, that he received the alleged Harrison license by mail and recorded it in the proper order book. He says he examined the certificate thoroughly and observed the signatures of John C. Eversole, E. E. Hogg, and H. C. Eversole attached thereto; that he was familiar with the signature of E. E. Hogg, and to the best of his knowledge Hogg's signature to the certificate was in his handwriting.

Albert Harrison says he is the twin brother of appellant and in his best judgment they were born October 22, 1900.

James Shepherd is sheriff of Owsley County and has been a life long resident of that county. He was present at the March term of the Owsley Circuit Court in 1918, and says that he saw Harrison in Booneville on that date and that he was with some other men taking the examination to become lawyers. He remembers Harrison because Harrison is cross-eyed, and he remembers the date because it was just before he went into the army in April 1918.

Several other witnesses testified concerning the good and bad reputation of the interested parties.

Hector Johnson testified that he took the bar exam-

ination at the March term of the Owsley Circuit Court in 1918, that he knew Harrison at that time, and that Harrison was not present and did not take the examination.

The certificate in controversy is apparently not in existence. It was not produced and is not in the record. Harrison says he does not have the original certificate but that after he had it recorded in 1937, he left it with a printer at McKee for the purpose of having it renovated, and that he has not seen the certificate since.

There are many facts proved which support the charge that the purported certificate was forged—for instance:

First—(a) Harrison was only seventeen years old when he claims he took the bar examination in the Owsley Circuit Court on March 18, 1918; (b) he did not actively engage in the practice of law until about 1933 or 1934; and (c) the 1918 record of Harrison's age appears to have been altered so as to show him to be twenty-one years of age in 1918.

Second—the character certificate (a) was dated on Sunday, March 17, 1918; (b) it was entered on the records a year later and at the bottom of the page; and (c) there is evidence that the signature of the County Judge to the certificate is a forgery.

Third—the law license (a) is not in existence and there is a poor explanation of its absence; (b) the license is dated March 18, 1918. In 1918 the Owsley Circuit Court commenced on the 4th Monday in March, which fell on March 25th. The license as recorded, and as it appears in the record, shows that it was issued by a Judge of the 23rd Judicial District, and in 1918 Owsley County was a part of the 33rd Judicial District, and remained so until 1924, when it was changed to the 23rd. In 1924 the court term in Owsley County was advanced from the 4th Monday to the 3rd Monday. These facts at least create a strong inference that the certificate was forged and that the forger did not know of these changes but was relying on the statutes in existence at the time of the forgery; and (c) the Owsley County court house was destroyed by fire in 1929, and this eliminated the possibility of referring to any contradictory records made theretofore.

There is one further material fact. Ezart Ashcraft, an attorney of Irvine, testified that in 1935 he sent his law license to the circuit court clerk at McKee for the purpose of having it recorded, and that it remained in that office until 1937. Harrison was working in the office of the circuit court clerk at that time and helped record the Ashcraft certificate. The Harrison certificate and the Ashcraft certificate are worded almost exactly alike, although they are from different districts.

It is evident that these facts are more than sufficient to support the finding of the chancellor that the certificate was forged.

The judgment is affirmed, and Allen Harrison is hereby disbarred from the further practice of law in this Commonwealth.