In the Matter of the Application of SIDNEY HANDLER, Petitioner, for a Mandamus Order against CHARLES W. BERRY, as Comptroller of the City of New York, and JAMES J. WALKER, Mayor of the City of New York, Respondents.

Supreme Court, New York County, January 2, 1931.

*Samuel Seabury* and *Bernard Hershkopf*, for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel [William E. C. Mayer* and *J. Joseph Lilly* of counsel], for the respondents.

CALLAHAN, J. There are two important questions involved herein: *First*, is the grant of power to the Appellate Divisions of the Supreme Court by chapter 500 of the Laws of 1930 (amending section 132 of the Code of Criminal Procedure) to investigate inferior courts and the judges thereof unconstitutional? *Second*, if not, is a referee appointed pursuant to the provisions of such statute authorized to employ an attorney at law to assist such investigation?

The respondents contend that the powers conferred on the Appellate Division of the Supreme Court by the act above mentioned conflict with article VI of the State Constitution in that the statute attempts to confer on the court powers that may not be granted to a judicial body. Section 17 of article VI of the State Constitution provides: " Justices of the peace, justices of the Municipal Court of the city of New York, and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law." Section 2 of article VI of the Constitution provides: " The several Appellate Divisions, except as hereinafter provided, shall have and exercise such original or appellate jurisdiction as is now or may hereafter be prescribed by law. * * * From and after the last day of December, eighteen hundred and ninety-five, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms and by the General Terms of the Court of Common Pleas for the city and county of New York, the Superior Court of the city of New York, the Superior Court of Buffalo and the city of Brooklyn, and such additional jurisdiction as may be conferred by the Legislature." Section 132 of the Code of Criminal Procedure, as it existed prior to the amend-

ment of 1930, conferred on the justices of the several Appellate Divisions power to remove justices of inferior courts, with the right to order proofs upon any proceeding for such removal to be taken before a referee. Chapter 500 of the Laws of 1930 added to this power of removal the power to investigate inferior courts and the right to designate a justice of the Supreme Court or a referee to conduct such investigations. There is other express legislative authority for the removal of magistrates in the city of New York. Section 103 of the Inferior Criminal Courts Act of the City of New York (Laws of 1910, chap. 659), as amended by chapter 568 of the Laws of 1930, provides: " A justice, city magistrate or chief clerk may be removed for cause after due notice and an opportunity of being heard by the appellate division of the supreme court within the judicial department where such justice, city magistrate or chief clerk resides."

It is plain that the statutory provisions relating to removal were enacted to carry out the constitutional mandate contained in section 17 of article VI, above quoted. The power of removal of a judicial officer seems to be one variously conferred by law on executive, legislative and judicial officers. Whether or not such power is properly a judicial function cannot be disputed in this instance because of the express constitutional requirement that a court exercise it.

The sole question involved is whether or not the addition of the power to investigate to the existing power to remove, conflicts with the constitutional provisions as to the power and functions of Appellate Divisions of the Supreme Court. The Court of Appeals of this State recently determined in the case of *People ex rel. Karlin* v. *Culkin* (248 N. Y. 465) that the Appellate Division of the Supreme Court had the right to institute a general inquiry into the conduct of attorneys at law in respect to certain alleged abuses. That inquiry had no express legislative sanction as has the present one. The court in that case, after reviewing extensively the history of the power of courts to regulate the professional conduct of attorneys, decided that the power to investigate alleged improper practices among such attorneys was a necessary incident to the power to remove them. It is said (at p. 477): " Preliminary inquiry there must be, at least to some extent, before a decision can be reached whether to prosecute at all. * * * The power to inquire imports by fair construction the power to inquire by methods appropriate and adequate, and so by compulsory process if search would otherwise be thwarted."

It appears logical that if as incidental to an inherent power to regulate the conduct of and removal of attorneys at law the Appel-

late Division was authorized to inquire generally into practices and conditions prevalent among attorneys, it was likewise authorized as incidental to an express statutory power to remove magistrates to conduct an investigation of the Magistrates' Courts. Especially so where the purpose of such investigation as stated in the order in the present case is to report the proceedings with the opinion of the referee to the court for such other and further action or proceedings as to the court should seem just and proper. That the power to inquire is incidental when necessary to properly carry out a legal duty is further pointed out in the case of *People ex rel. Karlin* v. *Culkin (supra)* by the court calling attention to the fact that legislative bodies frequently so investigate in aid of legislation. It is also well known that the executive is frequently authorized by statute to investigate in order to aid in the proper administration of law. There seems to be no reason why a court which is called on to remove judicial officers in a proper case should have less right to exercise the power of investigation as an aid to it in carrying out the duties cast on it by law. But as already pointed out the inquiry here is not whether this court has the inferred power to investigate, but whether the express power to do so may be conferred on it by the Legislature. Logic and necessity would have to give way to constitutional limitation if such limitation exists.

The respondents claim that the limitation overridden here is that against the power of the Legislature to charge courts with other than judicial duties or such administrative duties as are reasonably incidental to such judicial duties. That such extra-judicial duties may not be imposed on the courts is a rule deeply imbedded in the law of this State. (See *Matter of Richardson*, 247 N. Y. 401, and cases cited.) In the last case the Court of Appeals reviewed an act of the Legislature authorizing the Governor to empower a justice of the Supreme Court to investigate the conduct of a borough president in the city of New York. The statute required such justice, when so designated, to conduct an inquiry and make his report to the Governor of the State. The power of removal of a borough president rests under the law on the Governor of the State. The court held that the act was unconstitutional in that it charged a justice of the Supreme Court with the mandatory performance of duties non-judicial. The basis of that decision was, however, that the investigation therein directed was not preliminary or ancillary to action unmistakably judicial. Mr. Justice SCUDDER, the investigator named in the *Richardson* case, was directed to return his report, not to a court for judicial action, but to the Governor for executive action. Such a duty is clearly distinguishable from that cast upon the investigating officer in the present case,

for here the report is to be made to a judicial body for their action, and said body is expressly charged by constitutional and statutory mandate with duties which it may be called on to exercise on the basis of the report. The present case seems more analogous in fact to *Matter of Davies* (168 N. Y. 89), where the Court of Appeals held that the Legislature might confer on the Supreme Court power to appoint a commissioner before whom the Attorney-General would examine witnesses to aid him in determining whether the anti-monopoly laws had been broken. This was held to be properly the subject of judicial action because the testimony taken might be used in drawing a complaint or trying an action if a violation was discovered. This was held to make the appointing power incidental to a judicial function although no action need in fact be brought, the decision of which question rested with the Attorney-General. The distinction between the two cases cited illustrates the reason why the power to inquire granted by the present statute must be held to be one reasonably incidental to the fulfillment of judicial duties. " The performance of administrative duties as to matters incidental to the exercise of judicial powers or which have some reasonable connection with a judicial purpose has repeatedly been sanctioned." (*People ex rel. Welch* v. *Bard*, 209 N. Y. 304, 309.) Such conclusion having been drawn, it follows that the amendatory provisions of chapter 500 of the Laws of 1930 in no way infringe on the constitutional limitation of the powers of the Appellate Divisions.

The remaining question as to whether or not the referee may hire an attorney at law to aid him in his investigation requires merely a construction of section 132 of the Code of Criminal Procedure, as amended. Such section provides that the reasonable expenses of the investigation as certified by the Appellate Division shall be a charge against the city within which the courts or justices under investigation exercise their duty. The language of the section, in relation to the expenses of an investigation, differs from that in respect to the expenses of a proceeding for the removal of a particular justice. In the latter case only the expenses of the referee are made a public charge. In the former the reasonable expenses of the investigation are made such a charge. In *Matter of King* (130 N. Y. 602) the Court of Appeals held in a proceeding to remove a police justice in the city of Buffalo that there was no authority for certification of the cost of employing counsel. The statute there under consideration, in so far as it was held applicable, allowed only the reasonable expenses of the referee. In another clause in the same law the phrase " reasonable expenses of the reference " was used. The court expressly stated that it did not

pass on the question as to whether or not counsel fees would be allowed, if the phrase " the reasonable expenses of the reference " applied. It held that the statute allowed solely the expenses of the referee and not that of the reference and, therefore, counsel fees could not be certified. It is evident, therefore, that the case is not authority against the relief herein sought. The decision in *Matter of Waldheimer* (84 App. Div. 366, 368) to the effect that the expense of the employment of additional counsel for the purpose of investigating witnesses was not justified under a statute allowing counsel assigned by court in death cases their " personal and incidental expenses " does not preclude the certificate sought herein. It might well be that the employment of an assistant to counsel for the purpose of a general inquiry into conditions in inferior courts would be a reasonable expense of such investigation, although hiring assistant counsel was not a " personal or incidental expense " in the case of a lawyer assigned to defend a person charged with murder. Other cases cited by respondents may be as readily distinguished. What is a " reasonable " expense is left by the present statute to be certified by the Appellate Division. That body has certified to the reasonableness of the attorneys' charges in the instant case.

In view of the fact that this investigation involves a broad inquiry into the conduct of twenty-two courts and approximately twenty-five magistrates, plus inquiry into the conduct of numerous attorneys, and the further fact that the matters under consideration require the examination of legal documents and the acts of lawyers and judges, it must be plain that the certifying body had the right to approve of the hire of attorneys to pass on the material pertaining to the inquiry. While it is true that in order to justify the assumption of power to control the public purse a clear warrant of law must exist, it is likewise true that such warrant of law can be granted in general as well as in specific language. The language used in the present act is general, but it clearly justifies the right to certify as a reasonable expense the item here involved. It was stated on the argument that the respondents' objection to paying the petitioner's claim is based on their desire to avoid setting a precedent of liability on the part of the city of New York for counsel fees in this class of investigation. This attitude is commendable but the objection in the present case appears unwarranted. It is certified by the petitioner that his work consisted of " examination of witnesses and investigation of complaints." The petitioner states that he has worked regularly during fixed periods each day aiding counsel to the investigation and for such work the counsel to the referee has fixed his salary at $100 weekly. Payment for

work of this class cannot set a precedent for liability by the city for a general award of counsel fees as such. It is time enough to pass on that question when and if it arises.

As the parties stipulated upon the hearing before me that solely questions of law were involved and that the city chamberlain might be joined as a necessary party, the court will direct the issuance of a peremptory mandamus order for the payment of the charges involved herein.

Settle order on notice.