In the Matter of the Answer to the Communication of His Excellency Governor FRANKLIN D. ROOSEVELT.

Second Department, February 26, 1931.

PER CURIAM. The Executive's letter incloses a petition and a letter from a correspondent. The petition is signed by about 533 persons, 216 of whom do not reside in Kings or Queens or Richmond county, and one of them is a resident of New Jersey.

In the correspondent's letter it is stated: " That your Excellency will notice from the documents you have in your possession that eight City Magistrates of Brooklyn have recently been the subject of publicity in connection with their duties.

" Four have been named in connection with illegal proceedings in commitment of wayward minors.

" Three have recently been before the Appellate Division, one escaped action by a 3 to 2 decision, Judge Lazansky being in the minority.

" One was censured as recently as last Friday.

" One is before Referee Van Siclen.

" Another was before Chief Magistrate Corrigan on a charge of improper conduct."

We may dispose of these references to the eight city magistrates seriatim. Four of these magistrates are mentioned in connection with having committed wayward minors on pleas of guilt, without taking evidence thereof, in conformity with the decision in *People ex rel. Deordio* v. *Palmer* (230 App. Div. 397), decided October 10, 1930, by a divided court. The uniform practice of the magistrates for many years has been to act upon pleas of guilt, without taking evidence establishing the guilt. This practice was deemed to have been approved by the unanimous decision in *People ex rel. Pogoda* v. *Superintendent of Wayside Home for Girls, Inc.* (217 App. Div. 763), decided in June, 1926. The question is soon to be presented to the Court of Appeals.

The practice of these four magistrates in this regard, under the circumstances — even if eventually it be decided to have been an erroneous exercise of judgment — would not, under long-settled authority, permit disciplinary action by this court. These specifications are without substance.

As to the remaining four magistrates, no charge against any one of them involved moral turpitude or corruption in office. Two (Eilperin and Healy) were the subjects of charges which were found not to have any basis in fact. In the Eilperin case the conclusion was reached upon a finding made after an investigation before a referee appointed by this court. In the Healy case a similar result followed an investigation by Chief City Magistrate Corrigan.

Magistrate Hirshfield was charged with unjudicial conduct in the performance of his duties. This court, in May, 1930 (*Matter of Brooklyn Bar Assn.* [*Hirshfield*], 229 App. Div. 654), after formal argument presented by the respondent Hirshfield and the complainant (acting through the Bar Association), decided as a matter of law that no basis existed for further prosecution. That decision was founded upon what the court deemed well-settled authority. A minority of the court was of opinion that a question of fact existed as to whether the magistrate had acted willfully, in disregard of law, in the manner in which he presided over the proceeding under investigation. This case is closed by our decision,

so far as concerns the questions therein involved, and may not be made the subject of further investigation by this court.

Magistrate Rudich was charged with having failed to observe a rule of his court in regard to fingerprint records. This charge was sustained. There was no evidence of willful misconduct or corrupt or immoral motive. Chief City Magistrate Corrigan co-operated with our court in this inquiry. The magistrate was censured; a determination fairly proportioned to the offense.

It thus appears that the references to these eight magistrates constitute no ground for ordering an investigation of a general character, since no one of the cases involved moral turpitude or corruption. No one of them indicates an obnoxious condition that would warrant a general investigation.

The conduct of the magistrates in Brooklyn has been the subject of scrutiny by the Brooklyn Bar Association, through its grievance committee. It prosecuted the Hirshfield complaint. It has since been made acquainted with what was available affecting magistrates and also with most, if not all, of what is contained in the correspondent's communication. Despite this, that association, apparently, has found nothing more to warrant presentation to this court. This is not without significance.

In addition to the foregoing, a disappointed litigant has since brought to this court's attention another matter — an alleged grievance involving Magistrate Marvin, of Queens county. Inquiry disclosed that there was no merit to the complaint, in that what the complainant asserted as a grievance, so far as sustained by fact, did not, as a matter of law, justify any disciplinary action.

This court recognizes that it has a serious responsibility to discharge. This responsibility, however, is twofold in character. The court should order an investigation when the need therefor is made apparent by some reasonably concrete presentation of information or fact tending to show wrongdoing. It, likewise, is under a judicial duty to refrain from ordering an investigation improvidently. An investigation by this court, without information or facts before it justifying action, would give a basis for unjust criticism of the magistrates and loss of confidence in their courts, to the public confusion. To such a result this court should not lend itself. The statute (Code Crim. Proc. § 132, as amd. by Laws of 1930, chap. 500) places the responsibility of determining when it should take action solely upon this court. In discharging this responsibility this court should not be moved by other than information or facts which would warrant, if substantiated, disciplinary action. Sound judicial principle requires that this court may not be moved to

investigate upon mere hue and cry, without either facts or information justifying a ' belief in the existence of facts indicating wrongdoing.

The petition first presented to this court by the correspondent directly, and now for a second time through the Governor's communication, is devoid of fact or information warranting an investigation. This paucity of fact or information persists, and despite the wide publicity given to the Magistrates' Courts, this court has received no communication from any other source warranting or indicating the need of an investigation.

If any organization or any individual possessing information or facts of corruption or wrongdoing in the Magistrates' Courts presents the same to this court, speedy and thorough action will follow.

YOUNG, CARSWELL, SCUDDER and TOMPKINS, JJ., concur; LAZANSKY, P. J., and HAGARTY, J., dissent in the following memorandum:

We are in full accord with the statement of facts regarding Magistrates' Courts in the boroughs of Brooklyn, Queens and Richmond, contained in the answer of the majority members of this court to his Excellency, the Governor. From the investigation of the specific charges presented to us against individual magistrates, we have found no evidence of incompetency, and certainly no evidence of corruption or wrongdoing by them.

We must, however, recognize that the Magistrates' Courts have attracted unfavorable public attention, though we hold the view that it is unjustified so far as the courts of these boroughs are concerned. That this condition exists we deem to be unfortunate, because it is in the Magistrates' Courts that the average citizen seeks to have his wrong, real or imaginary, made right; there many of our citizens receive their first impressions of American institutions; it is the magistrate who determines whether or not one charged with crime is to be held for the grand jury; minor charges of offenses against the Penal Law and ordinances are tried and disposed of in that court.

Up to this time we have not favored a general inquiry because we have been and now are of opinion that it was not justified by any facts brought to our attention. Now, however, this unfavorable opinion of these courts has been crystallized into an idea in the public mind that there should be an inquiry — an idea indicated by the fact that the Governor of the State has sent the letter being answered. Magistrates are entitled to a vindication and it should not be denied them. A matter of public policy is involved and

under all the circumstances, the court, with power to act on its own motion, should heed its demand. For this reason we favor an inquiry.

Mr. Justice KAPPER, who was unable to be present at the court's conference, has advised that he is inclined to favor an inquiry.

Memorandum that a general inquiry into the Magistrates' Courts of the boroughs of Brooklyn, Queens and Richmond is not warranted directed to be forwarded to the Governor.