IN RE JAIME MARÍN BÁEZ, Respondent.

No. 4.   Submitted March 18, 1958.—Decided April 23, 1959.

*Hirám R. Cancio, Secretary of Justice (J. B. Fernández Badillo, former Secretary of Justice, in the complaint) and Noel Colón Martínez and Jorge Meléndez Vela, Special Prosecuting Attorney At Large and Special Prosecuting Attorney, respectively, for petitioner. Jorge Marín Báez and Raúl A. Feliciano for respondent.*

MR. JUSTICE SERRANO GEYLS delivered the opinion of the Court.

The Secretary of Justice filed a complaint in this Court against Jaime Marín Báez, Judge of the Justice of the Peace Court of Puerto Rico, Jayuya Part, charging him with illegal and immoral conduct unbecoming a magistrate, consisting, firstly, in having had carnal contact in his office, in the premises where the Justice of the Peace Court of Jayuya is located, with Isabel Abraham Vázquez, who was not his wife, since respondent was at that time a married man; and secondly, in having unduly exercised the influence of his position when he caused the clerk of the District Court of Puerto Rico, Adjuntas Part, to file a complaint for the crime of adultery against Isabel Abraham Vázquez, allegedly committed with respondent himself, knowing that the complaining

police did not appear in the office of the clerk of the latter court to swear to the complaint, nor had knowledge of, nor had investigated the facts alleged in the complaint, and stating that it had been submitted for decision to Hon. Judge Rafael Cintrón Lastra, of the District Court, Adjuntas Part, respondent knowing that such assertion was false. The second charge further alleged that respondent had tried to substitute the latter complaint for another which had been filed upon respondent's request and by order of Judge Cintrón Lastra, and had urged the clerk to destroy this first complaint, arguing that such a thing was permissible and that that was the view of Hon. Judge Miguel A. Velázquez, of the Superior Court, Ponce Part, respondent knowing that his request was illegal, immoral, and improper and that it was false that Judge Velázquez had stated his view on any such point.

Respondent filed a motion for dismissal, which we denied at the commencement of the hearing, stating that the grounds for our decision would be made known when the case was decided on the merits. At the hearing held before a full Court both parties offered abundant evidence. Based on our observation of the witnesses and after a careful analysis of all the evidence in the record, we have no doubt whatever that the facts alleged in the complaint were clearly proven and that respondent engaged, therefore, in the "immoral conduct" prohibited by § 24 of the Judiciary Act (4 L.P.R.A. § 232).[1] We pass on therefore, to set forth the grounds for denying the motion to dismiss.

---

[1] "Charges made against any judge of the Court of First Instance shall be filed with the Administrative Director of the Office of Court Administration, who shall report the same to the Chief Justice, and if the Supreme Court shall so desire, shall make his recommendation as to further action or as to dismissal of the charges. The Supreme Court may cause such investigation to be made as it shall deem necessary and may request the Secretary of Justice to make such investigation and report to the Court.

"If the Supreme Court shall determine that there is cause for further proceedings, it may request the Secretary of Justice or other officer of

■■ The respondent maintains in the first place that "this Court lacks jurisdiction or legal authority to take cognizance of this case, because there is no legal provision authorizing the filing of charges against a justice of the peace." In support of that theory he maintains that § 24 of the Judiciary Act, implementing § 11 of Art. V of the Commonwealth Constitution and establishing the grounds and the proceeding for removal, refers specifically to the judges of the Court of First Instance (composed of the District Court and the Superior Court) and not to the justices of the peace. He adds that although § 21 of the latter Act [2] (4 L.P.R.A. § 201) makes specific reference to § 24 as to removal of justices of the peace, that reference includes only the persons occupying such offices at the time when the Act went into effect, and not those who, like respondent, were appointed subsequently.

---

the Court to prosecute the cause. The Secretary of Justice also, of his own motion or by direction of the Governor, may initiate a prosecution for the removal of a judge and shall then act as prosecutor. Prosecution shall be by complaint returnable to the Supreme Court charging the judge with immoral conduct or neglect of judicial duties. The Court shall accord the parties an opportunity to be heard, together with their witnesses and the court may, in its discretion while the proceeding is pending, suspend the judge from performing the duties of his office and receiving his salary. If the Court shall find the charges, or any part of them, sustained, it may censure or suspend the offending judge or remove him permanently from his office as it shall determine the most appropriate penalty under the circumstances.

"The Justices of the Supreme Court shall be removable only by impeachment as provided in the Constitution of the Commonwealth."

[2] "There shall be as heretofore forty-two (42) justices of the peace to be appointed by the Governor with the advice and consent of the Senate for a term of four years and until their successors qualify. *Justices of the Peace heretofore appointed shall complete their terms of office and shall be removable as hereinafter provided by section 24.* No person shall be appointed as Justice of the Peace unless he is at least twenty-one (21) years of age and enjoys good repute.

"If a Justice of the Peace is unable by reason of sickness, absence, or other disability, to perform the duties of his office, the Governor shall designate a qualified person who shall act in his stead until such time as the Justice of the Peace may resume his duties." (Emphasis supplied.)

Once more we are confronted with a petition to apply exclusively the letter of the law in our interpretative function, even when such application leads us to absurd results. *Cf. Borinquen Furniture* v. *District Court; Umpierre, Int.*, 78 P.R.R. 858, 861 (1956). Should we accept respondent's argument we would have to attribute to the Legislative Assembly, which in 1952 approved the Judiciary Act, the inexplicable purpose of drafting a proceeding for removal which would apply exclusively to the justices of the peace who were in office in 1952, but not to their successors, and of making the justices of the peace appointed after the law went into effect the only members of the Judiciary, and in all probability the only public officers, exempt from removal.[3] Obviously it is not possible to attribute such specious reasoning to the Legislature. It merely involves a grammatical error in drafting § 21, but that error can not be ranked as a directive of the law. We decide, consequently, just as we did impliedly in *In re Dávila*, 79 P.R.R. 768, 769 (1957), that § 24 of the Judiciary Act applies to justices of the peace.

▇▇▇▇ Respondent maintains in the second place that § 24 "is unconstitutional in its application to this case since this same Court having determined that there was cause for filing the complaint, it is now precluded from deciding the case on the merits, because in doing so it would be depriving the respondent of due process of law." He relies mainly on the case of *In re Murchison*, 349 U. S. 133 (1955), and also cites *Wong Yang Sung* v. *McGrath*, 339 U. S. 33 (1950).

---

[3] *Cf. Re Watson*, 286 P.2d 254, 256 (Nev. 1955). The only other possible alternative left would be to resort to the inherent power of the Executive to remove the officers appointed by him. *Myers* v. *United States*, 272 U.S. 52 (1926); *Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935); *Wiener* v. *United States*, 357 U.S. 349 (1958). Even in the hypothesis that such doctrine were applicable to a judge, there would arise the problem of a probable collision between such doctrine and § 11 of Art. V of our Constitution. As to the position and functions of the justices of the peace in the judicial system of Puerto Rico, examine *People* v. *Superior Court*, 80 P.R.R. 489 (1958).

In *Murchison* the constitutionality of the Michigan law which authorizes any judge of its courts to compel witnesses to appear before him in secret to testify about suspected crimes, was attacked for the second time before the federal Supreme Court.[4] Murchison and White, the appellants in the case, appeared before one of those judges to testify on gambling and bribery of policemen. Murchison's answers left the judge persuaded that he was committing perjury. The judge then charged him with perjury and ordered him to appear before him and show cause why he should not be punished for criminal contempt. White refused to answer some of the questions asked by the judge on the ground that he was entitled to have counsel present with him before so doing. The judge charged him with contempt and ordered him to appear subsequently. The same judge then tried them in open court and sentenced them for contempt. The Supreme Court of Michigan affirmed the judgment and the defendants appealed to the federal Supreme Court invoking, among other defenses, the guarantee of due process of law. The latter court, with three of its judges dissenting, accepted the appellants' contention and reversed the judgment.

The Supreme Court considered that under the aforesaid circumstances a judge could not be wholly disinterested in the conviction or acquittal of an accused; that as a practical matter the most probable thing would be that the judge's impressions acquired during the secret session weighed more heavily with him than any testimony given in the open hear-

---

[4] In *In re Oliver*, 333 U. S. 257 (1948), the federal Supreme Court had ruled that a judge acting under such circumstances could not summarily convict a witness of contempt for conduct in the secret hearings and that due process required in such cases that an accused be given a public trial after reasonable notice of the charges, the right to examine witnesses against him, call witnesses on his own behalf, and be represented by counsel. On the system of Michigan law and the *Murchison* case, see Robert G. Scigliano, *The Michigan One-Man Grand Jury* (1957), particularly pp. 80–84; Annotations in 54 Mich. L. Rev. 414 (1956); 44 Cal. L. Rev. 425 (1956), and 69 Harv. L. Rev. 119, 162–63 (1955).

ings;[5] that there were no public witnesses who could be called upon to give disinterested testimony concerning what took place in the secret chambers of the judge; and that the accused was offered the unfair alternative of waiving cross-examination of the judge—sole witness of the events—or cross-examining him, knowing that the judge himself would be the one called upon to rule on the credibility of his testimony.

The differences between the procedure forbidden in *Murchison* and that provided by § 24 of the Judiciary Act are clear and fundamental. It is obvious at first blush that the former is a penal procedure while the latter is civil, similar to an administrative procedure, although sui generis. That difference, although important because of the greater constitutional and statutory limitations applicable to proceedings which may deprive a person of his liberty, is not controlling. This is so because § 24 provides that the parties shall have "an opportunity to be heard" in a proceeding which, according to the legislative report,[6] is "essentially a trial," and the disinterestedness and impartiality of the judge is a basic requirement of every trial.[7] In trespassing, for that reason,

---

[5] The court was strongly aware of the fact that in finding White guilty the judge said the following: "there is one thing the record does not show, and that was Mr. White's attitude, and I must say that his attitude was almost insolent in the manner in which he answered questions and his attitude upon the witness stand. . . . Not only was the personal attitude insolent, but it was defiant, and I want to put that on the record." When counsel filed a motion to strike these statements because they were not part of the original record, the judge added: "That is something . . . that wouldn't appear on the record, but it would be very evident to the court." Mr. Justice Black commented in his opinion: "Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in . . . [the secret hearing] and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination." At p. 138.

[6] 4 L.P.R.A. § 232, p. 773.

[7] On these concepts of "disinterestedness" and "impartiality," consult the opinion of Judge Jerome Frank in *In re J. P. Linahan*, 138 F. 2d 650, 651–54 (C.C.A. 2, 1943).

the boundaries of the characterization of the procedure we notice that in the case at bar, unlike the *Murchison* case: 1) the justices of this Court were in no way whatever witnesses of the facts or influenced personally by the respondent's actions; 2) there were numerous witnesses of such events and the respondent had ample opportunity at a public hearing and with due assistance of counsel to examine them and offer testimony which he considered favorable to his defense; 3) the preliminary investigation was entrusted to certain officers of the Department of Justice and the justices of this Court had no relationship with the witnesses or intervened in any way whatever in the investigation; 4) the complaint was prepared and signed by the latter officers; and 5) they supported it before the Court by whatever evidence and strategy they deemed convenient. The *Murchison* case[8] is, therefore, clearly inapplicable to a situation in which the participation of this Court in the preliminary stage of the proceeding is limited to ordering an investigation of the facts,[9] to examining the report, and to ordering the filing of a complaint, if it considers that there is cause "for further proceedings."[10] We must decide whether this type of preliminary intervention violates procedural due process.

---

[8] Consider, also, that two recent decisions of the federal Supreme Court have considerably limited the effects of the broad language used in *Murchison*, reducing its authority to the specific facts raised therein. Examine *Nilva* v. *United States*, 352 U.S. 385 (1957) and *Green* v. *United States*, 356 U.S. 165 (1958), in which the dissenting justices (352 U.S. 396, 403; 356 U.S. 193, 199), in vain requested the application of *Murchison* to other situations, even when, in those cases, the trial judges had been directly influenced by the actions of the defendants. See, also, *Sacher* v. *United States*, 343 U.S. 1 (1952); 2 Davis, Administrative Law Treatise 177–78 (1958); *Yates* v. *United States*, 355 U.S. 66 (1957); *Offutt* v. *United States*, 348 U.S. 11 (1954); *People* v. *Susoni*, 81 P.R.R. 120 (1959).

[9] In the case at bar we did not have to order the investigation because the Department of Justice began it on its own initiative upon receiving a complaint.

[10] The case of *Wong Yang Sung*, cited by the respondent, has even less bearing on the problem at bar. It concerns an order of deportation against the petitioner, who appealed to the federal Supreme Court, maintaining that the administrative hearing was not conducted in conformance with the legal provisions of the Administrative Procedure Act. The court

This is a threadbare question in American administrative law. The most important administrative agencies of the federal and state government, responsible for the adjudication of controversies which have profound effects not only on the litigants, but also on the American economy and society, have been employing for a long time, procedures of the described nature. Federal and state courts[11] have repeatedly decided that kind of initial action—and others of even more extensive participation—standing alone do not transgress due process of law. *Marcello* v. *Bonds*, 349 U. S. 302, 305, 311 (1955); *Belizaro* v. *Zimmerman*, 200 F.2d 282, 283 (C.C.A. 3, 1952); *United States ex rel Dolenz* v. *Shaughnessy*, 200 F.2d 288, 291 (C.C.A. 2, 1952); *Levers* v. *Berkshire*, 159 F.2d 689, 693 (C.C.A. 10, 1947); *NLRB* v. *Botany Worsted Mills*, 133 F.2d 876, 882–83 (C.C.A. 3, 1943); *cert. denied*, 319 U. S. 751 (1943); *Brinkley* v. *Hassig*, 83 F.2d 351, 356–57 (C.C.A. 10, 1936); *In re Larsen*, 86 A.2d 430, 432, 435–36 (N. J. 1952); *Minn. State Board of Medical Examiners* v. *Schmidt*, 292 N. W. 255, 257 (Minn. 1940), *appeal denied*, 311 U. S. 617 (1940); *Chosick* v. *Reilly*, 270 P.2d 547, 549 (Cal. 1954); *cf. FTC* v. *Klesner*, 280 U. S. 19, 27 (1929); *Shaughnessy* v.

---

held, by a six to one vote, that the latter Act applied to deportation proceedings, and specifically § 5(c) which prohibits the investigative and prosecuting officers from participating in the decision of cases, with some exceptions. There was no formal discussion of the constitutional question. In the same year in which the *Wong Yang Sung* case was decided, 1950, Congress legislated to exempt the deportation proceedings from the provisions of the Administrative Procedure Act concerned with separation of functions, and that policy was reaffirmed in 1952. 64 Stat. 1044, 1048 (1950); 66 Stat. 209 (1952). The Supreme Court upheld the validity of that action in *Marcello* v. *Bonds*, 349 U.S. 302, 311 (1955). See also *Sigurdson* v. *Landon*, 215 F. 2d 791, 798 (C.C.A. 9, 1954); *United States* v. *Heikkinen*, 240 F. 2d 94, 99 (C.C.A. 7, 1957). It is also well to clarify that, notwithstanding the provision of § 5(c), the APA permits the combination of functions in numerous cases. 2 Davis, *op cit.* at 213–216. Nor do the decisions in *Shields* v. *Utah-Idaho R. Co.*, 305 U. S. 177 (1903) and *Yamataya* v. *Fisher*, 189 U.S. 86 (1903), which respondent asks us to consult, have any pertinence to the problem.

[11] In some of the cases cited the state courts have applied the well-known "rule of necessity." See on the general question 2 Davis, *op. cit.* at 175–83.

*United States ex rel. Accardi,* 349 U. S. 280 (1955); *Hari-siades* v. *Shaughnessy,* 342 U. S. 580, 583 (1952); *State Board of Optometrists* v. *Nemitz,* 90 A.2d 740, 748-50 (N. J. 1952). That is also the standard prevailing in our jurisdiction. *Rivera* v. *Labor Relations Board,* 70 P.R.R. 5, 10 (1949). Its validity has also been accepted in proceedings for removal of public officers. *Mangual* v. *District Court,* 60 P.R.R. 805, 807 (1942); *Thompson* v. *City of Long Beach,* 259 P.2d 649, 653 (Cal. 1953); *Boullioun* v. *Little Rock,* 3 S.W.2d 334, 336 (Ark. 1928); *Hawkins* v. *Common Council,* 158 N. W. 953, 957 (Mich. 1916); *Mayor of City of Everett* v. *Superior Court,* 85 N.E.2d 214, 219 (Mass. 1949); *Emerson* v. *Hughes,* 90 A.2d 910, 915-17 (Vt. 1952); *State* v. *Humphreys,* 40 S.W.2d 405, 406 (Tenn. 1931); *Hammers* v. *Board,* 134 N.E.2d 647, 650 (Ill. 1956); *Cooke* v. *Dodge,* 299 N.Y.S. 257, 262 (1937).

In disciplinary proceedings against attorneys there also exists the practice, supported by provisions of constitution, law or regulation, of entrusting to one administrative agency or officer the tasks of investigating, ordering the filing of the complaint, and deciding the case on the merits. According to the information contained in the work of George E. Brand, *Bar Associations, Attorneys and Judges–Organization, Ethics, Discipline* (1956), the courts carry out those functions in the federal jurisdiction[12] and in sixteen states,[13] while in ten

---

[12] Rule 8 of the Rules of the Supreme Court; Rule 7(3) of the First and Fifth Circuit; Rule 78 of the Court of Claims; Rule 8(3) of the Third Circuit; Rule 7(e) of the District of Columbia. *Theard* v. *United States,* 354 U.S. 278, 281 (1957). The constitutionality of combining such functions in the federal jurisdiction was upheld in *Randall* v. *Brigham,* 74 U.S. 523, 539-40 (1868); *Ex parte Wall,* 107 U.S. 265, 271, 273, 289-90 (1882); *Herman* v. *Dulles,* 205 F. 2d 715, 717 (D.C. Cir., 1953); *In re Clairbone,* 119 F. 2d 647, 650 (C.C.A. 1, 1941). *Cf. Theard* v. *United States, supra* at 282; *Selling* v. *Radford,* 243 U.S. 46 (1917); *Coughlan* v. *United States,* 236 F.2d 927, 928 (C.C.A. 9, 1956); *In re Fletcher,* 221 F. 2d 477 (C.C.A. 4, 1955); *In re Los Angeles County Pioneer Society,* 217 F. 2d 190 (C.C.A. 9, 1954).

[13] Alabama, Connecticut, Georgia, Indiana, Iowa, Kansas, Massachusetts, Nebraska, New Hampshire, New Jersey, New York, North Dakota, Ohio, South Dakota, Tennessee, and Virginia.

states[14] they are entrusted to professional associations, subject to judicial review. Four states[15] use both procedures, in the alternative. In Puerto Rico the case law sanctions the authority of this Court to order the investigation of an attorney's conduct and, after examining the report, to order that a complaint be filed against him, which shall be subsequently decided by the Court itself on the merits. *In re González*, 65 P.R.R. 357, 366–68 (1949); *In re Porrata*, 73 P.R.R. 674, (1952); *In re Guzmán*, 80 P.R.R. 689 (1958); cf. *In re Pagán*, 71 P.R.R. 712, 714 (1950). Several states provide judicial or administrative proceedings to discipline judges of specific categories,[16] and in the latter a commingling of functions is also permitted.[17]

But it is not only in administrative adjudication and in disciplinary proceedings against attorneys and judges where

[14] Arizona, Colorado, Delaware, Idaho, Kentucky, Michigan, Minnesota, Nevada, North Carolina, and Oklahoma.

[15] California, Illinois, Pennsylvania, and West Virginia. On the validity of these practices in the states, see: *McVicar v. State Board*, 6 F. 2d 33 (C.C. Wash. 1925); *State v. Humphreys*, 40 S.W. 2d 405, 406 (Tenn. 1931); *Harrison v. Commonwealth*, 204 S.W. 2d 221, 222 (Ky. 1947); *In re Hosford*, 252 N.W. 843, 848 (S.D. 1934); *Snyder's Case*, 152 Atl. 33, 35 (Pa. 1930); Annotation, *Suspension or revocation of medical or legal professional license as violating due process*, 98 L. Ed. 851, 855–64 (1954). Cf. *People ex rel. Karlin v. Culkin*, 248 N.Y. 465 (1928); *In re Disbarment Proceedings*, 184 Atl. 59, 67 (Pa. 1936).

[16] The trial by impeachment before the legislative houses or before certain special agencies is the method employed in the United States to remove federal judges and the judges of the courts of appeal and intermediate courts of a host of states. Examine the pertinent pages of the work of Brand, *supra*.

[17] Alabama: Alabama Code of 1907, § 7125. Minnesota: General Statutes of Minnesota 1913, §§ 5724–5725. New York: Constitution, Art. 6, §§ 9(a) and 17—2 McKinney's, Consolidated Laws of New York 132–34, 153; Code of Criminal Procedure § 132—66 McKinney's *op. cit. supra* at 132. North Dakota: 4 North Dakota Revised Code of 1943, §§ 441101–441114. Virginia: 3 Code of Virginia 1950, §§ 15–500 to 15–503. West Virginia Code of 1949, Annotated, § 17.09(4), 17.12(1)(b).

Examine: *Handler v. Berry*, 247 N.Y.S. 46 (1931); *Kane v. Rudich*, 10 N.Y.S. 2d 929 (1939); *Opinion of the Justices*, 248 N.Y.S. 312 (1931); *State v. Hasty*, 63 So. 559 (Ala. 1913); *Martin v. Dodge County*, 178 N.W. 167 (Minn. 1920); Dawley, *The Governor's Constitutional Power of Appointment and Removal*, 12 Minn. L. Rev. 451, 474–77 (1938).

the initial contact of the judge with the evidence is considered valid. In civil and criminal procedures there are numerous occasions when the judge who is going to decide the suit on the merits acquires in some way, to a greater or lesser extent, initial knowledge of the facts, or is required to accept a particular appraisal of the pleadings on which to base his determinations. Aside from the elementary question of the "image" that the judge may build upon examining well or poorly drafted allegations, we cite, by way of example, a judge's rulings on motions for dismissal, petitions for restraining orders, motions for summary judgment and new trial, and his participation in pre-trial conferences, in the acts of reconciliation of certain divorce cases, and in the innumerable incidents resulting from the modern methods of discovery of evidence. More so, in administrative as well as in criminal and civil procedure, the action of a judge who retries a case after his judgment in the former trial was reversed, when he had the opportunity to know all the details of the evidence, is not void as unconstitutional.[18] *The People v. Ortiz*, 22 P.R.R. 172, 173 (1915);[19] *Kolowich v. Wayne*

---

[18] An identical test has been applied when the judge intervenes in several trials against different persons accused of the same offenses. *Thanos v. Superintendent, Maryland State Reformatory*, 104 A. 2d 926, 927 (Md. 1954); *Ferrari v. United States*, 169 F. 2d 353, 354 (C.C.A. 9, 1948). It is also applied to civil cases in similar circumstances. *Denis v. Perfect Parts, Inc.*, 142 F. Supp. 263 (Mass. 1956) and cases cited therein. See in general 30 Am. Jur., *Judges*, § § 178–188.

[19] In this case the judge who tried the case had acquitted the defendant, in a former trial, of a crime which arose from the same events and had ordered the district attorney to file an information which was heard in the second trial. In *Gandía v. Stubbe*, 29 P.R.R. 148 (1921), it was held that a judge who had, while acting as district attorney, filed an information against an accused was not disqualified thereby from sitting as judge in a civil action, in which the same person was now the defendant and which was based on the same facts which originated the criminal charges. (Act No. 19 of May 20, 1921—Sess. Laws, p. 152—later established the contrary. That is the situation prevailing today. Rule 63(c) of the Rules of Civil Procedure (1958); *Valentín v. Warden*, 80 P.R.R. 450, 467, footnote 20 (1958). In *People v. Ruiz*, 58 P.R.R. 641, 643–44 (1941), it was held that a judge is not compelled to disqualify himself as trial judge in a criminal case because prior to the trial an accused was

*Circuit Judge,* 250 N. W. 875 (Mich. 1933); *In re J. P. Linahan,* 138 F.2d 650 (C.C.A. 2, 1943); *Board of Medical Examiners* v. *Steward,* 102 A.2d 248, 252 (Md. 1954); *Walker* v. *State,* 84 So.2d 383 (Ala. 1955); Annotation, *Right of judge to retry case or review his own decision,* 57 L. Ed. 1003 (1912). In *N.L.R.B.* v. *Donnelly Garment Co.,* 330 U. S. 219, 236 (1947), the federal Supreme Court held that such action in the administrative field was not void. And added: "Certainly it is not the rule of judicial administration that, statutory requirements apart . . . a judge is disqualified from sitting in a retrial because he was reversed on earlier rules. We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing."

In short, it is not and has never been the constitutional standard that any prior contact with the evidence, regardless of its scope and effect, disqualifies a judge from deciding subsequently the merits of a controversy. In each situation where that constitutional defect is alleged we must consider the nature of the procedure, the degree of connection between the judge and the evidence, and the probable influence of that connection on his disinterestedness and impartiality, and weigh those factors in the light of the moral integrity and professional discipline essential to any judge worthy of the name. Up to the present, only in extreme cases like that of *In re Murchison,* has a case been declared invalid for such

---

taken before him and he ordered his arrest and fixed bail and took oath to a statement made before the police. In *O'Malley* v. *United States,* 128 F.2d 676, 685 (C.C.A. 8, 1942), reversed on other grounds in 317 U. S. 412 (1943), it was held that there had been no prejudice against the defendant because the judge who later tried the proceeding requested the district attorney to prosecute commenting that ". . . there is . . . ground for believing that there has been a very gross . . . fraud perpetrated . . . ." As to the effects of the judge's intervention in the preliminary examination, see *Wilson* v. *Renfroe,* 91 So.2d 857, 860 (Fla. 1957) and cases cited herein.

a defect.[20]  We hold, for the reasons stated above, that the procedure instituted by § 24 of the Judiciary Act does not transgress due process of law.[21]

An order is hereby entered removing respondent, effective from the date of our order suspending him from office and salary.

Mr. Justice Belaval concurs in the result in a separate opinion.

Mr. Justice Hernández Matos took no part in the case.

Mr. Justice Santana Becerra concurs in the opinion and gives his reasons separately.

---

Separate opinion of MR. JUSTICE BELAVAL.

The question before us is a removal proceeding ordered by this Court, in which the respondent's removal from his position as judge of the Justice of the Peace Court of Puerto Rico is requested.

The evidence presented before this Court clearly proved the facts alleged in the complaint.  It seems that the untimely outburst of an autumn passion made this judge commit a

---

[20] We are not considering, of course, the cases where the judge has personal interest in the outcome of the suit.  Statutory provisions take care of establishing the grounds for disqualification on such occasions.  *Valentín* v. *Warden, supra* at 465–68.  See, also, *Tumey* v. *Ohio,* 273 U. S. 510 (1927).

[21] In so doing, it must not be understood that we consider it to be the best procedure.  That determination, pursuant to Art. V, § 11 of the Constitution, rests with the Legislative Assembly and not with us.  However, it is incumbent on us to indicate that any procedure that might be adopted must place in skillful and responsible hands the function of deciding whether or not a complaint against a judge should be filed.  Otherwise the judges would be exposed to a multitude of proceedings motivated by irresponsible and unjustified complaints constituting a menace to their peace and to the stability and reputation of the system.  An excellent discussion of these problems, in the light of national and foreign experience, is found in Burke Shartel, *Retirement and Removal of Judges,* 20 Journal of the American Judicature Society 133 (1936).  Examine, also, *Institute of Judicial Administration, Selection, Tenure, and Removal of Judges in the 48 States, Alaska, Hawaii, and Puerto Rico* (1956) ; Pedro Muñoz Amato *et al., La Nueva Constitución de Puerto Rico,* 495–98 (1954) ; *Selection and Tenure of Judges,* 11 Journal of the American Judicature Society 145, 151 (1927).

series of absurdities which no one would have expected from his clean service record. In his benefit we must add that his defense was discreet, considerate, at times enveloped by a chivalrous silence. There is no doubt, then, that we are facing a case of "immoral conduct," such as is provided in § 24 of Act No. 11 of July 24, 1952—4 L.P.R.A. 773, §232.

The respondent's defense is not based on the insufficiency of the juridical facts, but on two legal questions, one of a statutory character and another of constitutional character. The statutory question alleges that § 24 of Act No. 11 of July 24, 1952 "does not vest the Supreme Court with authority to file complaints against a justice of the peace," as the section refers exclusively to the judges of the courts of Puerto Rico and can not be applied to the justices of the peace since they do not belong to any court whatever. We have already decided that the justices of the peace continue being committing magistrates insofar as they "fix and accept bails and issue warrants for arrest, for search and seizure." *People* v. *Superior Court; Detrés, Int.*, 80 P.R.R. 489, 494 (1958, Santana Becerra). To this effect they form part of the new judicial system established by the Judiciary Act of the Commonwealth of Puerto Rico of 1952. Section 21 of said Act provides that the justices of the peace "shall be removable as hereinafter provided by section 24," which is the section applicable to the removal of judges of the Court of First Instance.

Respondent's argument is that § 21, upon providing that "Justices of the Peace heretofore appointed shall complete their terms of office and shall be removable as hereinafter provided by section 24" limits the applicability of § 24 to the judges in office at the time of enacting the law, and not to the judges, who like respondent, were appointed subsequently. If this error in drafting the law were to be the controlling factor, it would not, on that account, overrule the subsequent implication which is an essential rule of construction. As stated by the Secretary of Justice, such interpretation would.

lead us to the absurd consequence of creating a penalty for the judges in office at the time of the enactment and not creating any penalty for the judges subsequently appointed. It is evident that that is not the intent of the statute, and that notwithstanding the conjunction employed in the purely grammatical drafting of the statute, it embodies two different and independent provisions. That is why we have applied §§ 21 and 24 jointly when dealing with the removal of justices of the peace: *In re Dávila*, 79 P.R.R. 768, 769 (Per Curiam, 1957).

The constitutional question involved deserves a more exhaustive consideration. Section 24 of the Judiciary Act of 1952 provides the following proceeding for removal:

"Charges made against any judge of the Court of First Instance shall be filed with the Administrative Director of the Office of Court Administration, who shall report the same to the Chief Justice, and if the Supreme Court shall so desire, shall make his recommendation as to further action or as to dismissal of the charges. The Supreme Court may cause such investigation to be made as it shall deem necessary and may request the Secretary of Justice to make such investigation and report to the Court.

"If the Supreme Court shall determine that there is cause for further proceedings, it may request the Secretary of Justice or other officer of the Court to prosecute the cause. The Secretary of Justice also, of his own motion or by direction of the Governor, may initiate a prosecution for the removal of a judge and shall then act as prosecutor. Prosecution shall be by complaint returnable to the Supreme Court charging the judge with immoral conduct or neglect of judicial duties. The Court shall accord the parties an opportunity to be heard, together with their witnesses and the court may, in its discretion while the proceeding is pending, suspend the judge from performing the duties of his office and receiving his salary. If the Court shall find the charges, or any part of them, sustained, it may censure or suspend the offending judge or remove him permanently from his office as it shall determine the most appropriate penalty under the circumstances."

The respondent alleges that said § 24 is unconstitutional because "this same Court having determined that there was cause for filing the complaint it is now precluded from deciding the case on the merits, because in so doing it would be depriving the respondent of due process of law," since "the guarantees of due process of law require that judicial or quasi-judicial proceedings be conducted in an impartial court, which has not previously had opportunity to form opinion on the facts involved" and that "pursuant to the case of *In re Murchison*, 349 U. S. 133 (1955), the judge who determines probable cause in a criminal case is precluded from judging the case on its merits," this rule being applicable also to cases of administrative character, pursuant to the decision of the case *Wong Yang Sung* v. *McGrath*, 339 U. S.33 (1950), requesting also to rule on the possible applicability of the decisions of *Shields* v. *Utah–Idaho C. R. Co.*, 305 U. S. 177 (1938) and *Yamataya* v. *Fisher*, 189 U. S. 86 (1903) to the facts of this case.

The case law mentioned above is not applicable to a proceeding for removal of judges. In the general approach to the question the appellant incorrectly treats the proceeding for removal of judges as if it were of a penal or administrative character. The proceeding for removal is not a substitution for any prosecution for the commission of a crime. The only purpose of removal is the recovery by the Commonwealth of those prerogatives of its police power delegated to a magistrate. In § 21 of Article III of our Constitution, concerning impeachments, the separateness of both procedures is established, that is: ". . . the person impeached, however, may be liable and subject to indictment, trial, judgment and punishment according to law . . . ."

Neither can the proceeding for removal of a judge be considered an administrative procedure. Magistracies, by their special public character do not belong to the officers.

themselves but to the Commonwealth. In our judicial system, no magistracy can be considered as a property right. What it does constitute is a dignity of such rank, that any vicious intervention therewith would be the equivalent to annulling one of the most desirable safeguards of our constitutional reform.

A close examination of the first section of Article V of our Constitution reveals as outstanding the principle that "judicial power" is a prerogative of the public power of the Commonwealth, enjoyed by all magistrates, independent of their respective rank, as soon as they take charge of their judicial functions. A similar close examination of § 11 of Article V and § 21 of Article III of our Constitution reveals that the impeachment or removal test depends rather on the rank of the magistracies involved, than on a different political concept of the power of said magistracies. The result of both procedures is the same: the recovery by the Commonwealth of those prerogatives of its public power delegated to a magistrate. This is what attaches to a removal proceeding of a judge that special character which precludes us from considering it as something embodied in the penal or in the administrative law.

After considering § 24 of the Judiciary Act of 1952 in its own light, it is clear that the preliminary phase of the proceeding is entrusted to the traditional power of vigilance inherently possessed by the Courts of Last Resort or superior hierarchy over the Courts of First Instance or minor hierarchy, and that the fact that all the complaints against judges are referred to our Court, has no other design than permitting this Court to exercise a stricter inspection of the system and to have a better opportunity to establish a body of ethical principles of uniform application. If the cause is slight or trivial, our Court can choose between censure or dismissal of the charges. If the cause is serious, between temporary suspension or removal.

As can be seen, up to the moment of ordering the filing of a complaint against a magistrate, the Supreme Court of Puerto Rico exercises no other power than that of inspection of the whole system. After the complaint is filed, it acts in a public function similar to that exercised by the legislative body in a case of impeachment. That this last function may be labelled a judicial procedure, adopting the safest method available for meting the justice of a cause, does not alter the public character thereof.

It is unquestionable that in this case, the respondent tried to use his judicial power for "*il suo particolare*." Judges have great power, a power which tends to be stable not only by selection of human excellency, but by a large democratic tradition. Therefore, their personal conduct must obey a training for restraint of power. Perhaps the whole of democracy is but a training for restraint of power. Whenever someone forgets this special condition of public power, the whole democratic order wavers.

In view of the foregoing, I agree that respondent should be removed and suspended from office and salary counted from the date of our decision.

---

Separate opinion of MR. JUSTICE SANTANA BECERRA.

In concurring with the opinion of the Court, I wish to state, in accordance with my pronouncements in *In re Gallardo, ante,* pp. 18, 75, that I share Mr. Justice Belaval's view concerning the nature of the proceeding for removal of judges. I believe that it is essentially an instrument of Public Power pursuant, to both effects, to the sovereignty function delegated to the magistrates, regardless of the judging body that intervenes. As to the cases to be heard before this Court, it suffices that the decision correspond to a conviction determined in the light of the evidence offered by the parties at the hearing provided by law.