Chauncey L. BURNETT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–0384–DG.

Supreme Court of Kentucky.

Nov. 22, 2000.

Daniel T. Goyette, Jefferson District Public Defender of Counsel, Bruce P. Hackett, Deputy Appellate Defender, Office of the Jefferson District Public Defender, Louisville, for appellant.

A.B. Chandler, III, Attorney General of Kentucky, Dennis W. Shepherd, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

JOHNSTONE, Justice.

Appellant, Chauncey Burnett, was convicted of first-degree trafficking in a controlled substance and first-degree persistent felony offender. He was sentenced to five years' imprisonment which was enhanced to fifteen years on the PFO I charge. His conviction and sentence were affirmed by the Court of Appeals. We granted discretionary review and reverse.

Burnett raises the same issues in this appeal that were addressed by the Court of Appeals: (1) whether the trial court should have granted his motion for a directed verdict; and (2) whether the jury instructions denied him his right to a unanimous verdict.

## FACTS

On November 15, 1996, Louisville police, responding to a narcotics complaint in an area of Clarksdale Housing Project known for frequent drug trafficking activity, saw Burnett duck behind and then enter a car. When the vehicle drove away, police followed until the vehicle came to a stop and the police observed Burnett getting out of the back seat on the passenger side of the vehicle. Burnett went to a nearby pay phone, and made a telephone call. The police moved in, suspecting that Burnett was engaged in trafficking activity. After conducting a pat down of Burnett, the police asked for, and obtained permission from the owner of the vehicle, Burnett's sister, to conduct a search of the vehicle. While searching the back seat, a small bag fell out of the vehicle onto the ground. The officer opened the bag, finding individually wrapped pieces of crack cocaine. Officer Scott, who was standing next to Burnett's sister during the search, testified that when the drugs were discovered, she stated, "It [the bag] wasn't hers and it had to be his [Burnett's]."

## DIRECTED VERDICT

Burnett first argues that the evidence presented against him was insufficient to support his trafficking conviction. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991). Upon review of the evidence presented by the Commonwealth, it was not clearly unreasonable for Burnett's jury to find him guilty.

The crux of Burnett's argument is that there was no proof that he had actual or constructive possession of the drugs. Rather, he argues that the proof showed that Elizabeth, and not he, had constructive possession of the drugs. In support of this argument, he cites to *Leavell v. Commonwealth*, Ky., 737 S.W.2d 695 (1987), and *Paul v. Commonwealth*, Ky.App., 765 S.W.2d 24 (1988).

The *Leavell* Court held, "The person who owns or exercises dominion or control over a motor vehicle in which contraband is concealed, is deemed to possess the contraband." *Leavell*, 737 S.W.2d at 697, citing *United States v. Vergara*, 687 F.2d 57 (5th Cir.1982). The main fact supporting the conclusion that the appellant had dominion or control over the vehicle was

that the appellant had the ignition key to a vehicle which had some ninety pounds of marijuana in its trunk. *Id.* While the key did not open the trunk, there was testimony that the owner of the car had relinquished possession of the car to the appellant by giving him the keys to the vehicle. *Id.* Further, the appellant was prevented from taking actual physical possession of the vehicle only by the intervention of his arrest. *Id.*

In *Paul v. Commonwealth*, the appellant was a back seat passenger in a vehicle that was stopped for speeding by a state trooper. *Paul*, 765 S.W.2d at 25. The trooper smelled marijuana and found small marijuana roaches in the dashboard ashtray. *Id.* The trooper then ordered the occupants (four in all) out of the vehicle. *Id.* After advising the four of their *Miranda* rights, he asked who owned the marijuana. *Id.* After no one volunteered, the trooper arrested all of them for constructive possession. *Id.* At the police station, the appellant was discovered to be in possession of small amounts of marijuana and cocaine. *Id.*

The appellant moved to suppress the drug evidence on grounds that the trooper did not have probable cause to arrest her in the first place because she could not be "constructively presumed to be in possession of everything in that car." *Id.* at 25–26. The trial court denied the motion and the appellant entered a conditional guilty plea. *Id.* at 26. The *Paul* Court reversed the appellant's conviction stating:

> It has already been held that the person who owns or exercises dominion or control over a motor vehicle is deemed to be the possessor of any contraband discovered inside it.... The owner of the vehicle in which [the appellant] was riding was seated in the front seat, and another individual was driving. [The appellant] was neither the owner nor the person who had dominion or control of the vehicle. She was a back seat passenger.

> While the arrests were being made the driver admitted to the detective that he had been smoking marijuana. The detective smelled marijuana and saw marijuana at the driver's feet. He also observed roaches in the front ashtray. Thus, the detective had probable cause to arrest the driver, but not [the appellant].

> Furthermore, a person's mere presence in the same car with a criminal offender does not authorize an inference of participation in a conspiracy. The probable cause requirement is not satisfied by one's mere propinquity to others independently suspected of criminal activity.

> As the arrest violated [the appellant's] constitutional rights, the evidence against her that was subsequently discovered should have been suppressed.

*Id.* (internal citations omitted).

The case at bar is factually distinguishable from *Paul* in two respects. First, the crack cocaine was found in the back seat next to where Burnett had been sitting as opposed to being found near the driver in the dashboard ashtray as was the case in *Paul*. In other words, in the case at bar, the cocaine was found in an area in the car within Burnett's immediate control. Whereas, in *Paul*, the marijuana was found in an area outside of the appellant's immediate control and inside an area within the immediate control of the front seat passengers of the vehicle. Second, in *Paul*, none of the occupants admitted to possessing the marijuana. In the case at bar, Elizabeth disavowed possession and claimed that the crack cocaine must have belonged to Burnett.

■ We agree that *Leavell, supra*, establishes the principle that proof that a defendant has possession and control of a vehicle is evidence to support a conviction for constructive possession of contraband found within the vehicle. However, we do not believe that either *Leavell* or *Paul* establishes the principle that proof that someone other than a passenger-defendant

had possession or control of a vehicle in which contraband is found, precludes a finding that the passenger-defendant was in constructive possession of the contraband. Rather, we believe that ownership and control of the vehicle is only one factor to consider in these types of cases.

■ To prove constructive possession, the Commonwealth must present evidence which establishes that the contraband was subject to the defendant's dominion and control. *Hargrave v. Commonwealth*, Ky., 724 S.W.2d 202, 203 (1986), *cert. denied* 484 U.S. 821, 108 S.Ct. 81, 98 L.Ed.2d 43 (1987). The proof offered by the Commonwealth in this case to show that Burnett was in constructive possession of the cocaine was: (1) that the cocaine was found in an area in the car next to where Burnett had previously been sitting, *i.e.*, in an area within his immediate control; and (2) that the owner of the car disavowed possession of the drugs and claimed that they belonged to Burnett. While not overwhelming, the evidence was sufficient to create an issue of fact for the jury.

## UNANIMOUS VERDICT

■ Burnett next argues that the jury instructions denied him a unanimous verdict. We agree.

The jury instruction for the first-degree trafficking charge provides:

You will find the Defendant, Chauncey L. Burnett, guilty under this Instruction if you believe from the evidence all of the following:

A. That in Jefferson County, Kentucky, on or about the 15th day of November 1996, the Defendant had in his possession a quantity of cocaine;

B. That in so doing, the Defendant knew the substance was Cocaine;

AND

C. That he had the cocaine in his possession with the intent to traffic in it.

If you find the Defendant guilty under this Instruction, you will say so by your verdict and no more.

The above instruction is circular in that it required the jury to find Burnett guilty of trafficking in cocaine if it believed from the evidence that he trafficked in cocaine. In other words, this instruction failed to set forth the statutory elements of the trafficking offense. Those elements were provided in a latter instruction, which defined trafficking as: *"Trafficking* —means to manufacture, distribute, dispense, sell or transfer a controlled substance." This is the same definition of "traffic" as provided in KRS 218A.010(24).

In objecting to the jury instructions, Burnett argued that the Commonwealth's sole theory of guilt on the trafficking charge was that he possessed the cocaine with the intent to sell it and that the instructions permitted the jury to find guilt on theories that were not supported by the evidence, *e.g.*, that he possessed the cocaine with intent to manufacture it. Even though the trial court agreed with Burnett and specifically found that the evidence presented only supported the theory that the cocaine was possessed with the intent to sell, the trial court denied the motion and gave the instructions as set forth above.

The instructions given in this case varied from the model instruction for first-degree trafficking in a controlled substance as set forth in 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 9.11A, which provides in pertinent part:

You will find the Defendant guilty of First–Degree Trafficking in a Controlled Substance under this Instruction if, and only if, you believe from the evidence all of the following:

A. That in this county on or about _____ (date) ..., he had in his possession a quantity of _____ (ID substance);

B. That he knew the substance possessed by him was _____ (ID substance);

AND

C. That he had the _____ (ID substance) in his possession with the intent of [ (selling) (distributing) (dispensing) it to another person;] [manufacturing _____ (ID substance)]

Thus, unlike the instruction given in the case at bar, under the model instruction for first-degree trafficking in a controlled substance, the elements of the offense are set forth in the instruction rather than requiring the jury to refer to the definition section. Furthermore, under the model instruction, the jury is instructed only as to those statutory methods of trafficking that are actually supported by the evidence. Whereas giving the jury the general, statutory definition of trafficking likely will result in the jury being presented with theories of guilt not supported by the evidence. This is exactly what happened in the case at bar.

■ "Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases." *Wells v. Commonwealth,* Ky., 561 S.W.2d 85, 87 (1978), citing *Coomer v. Commonwealth,* Ky., 238 S.W.2d 161 (1951); *Cannon v. Commonwealth,* 291 Ky. 50, 163 S.W.2d 15 (1942); *see also* RCr 9 .82(1). In *Wells,* the appellant was convicted of first-degree assault. *Wells,* 561 S.W.2d at 86. Under the instruction on this charge, the appellant could have been convicted "if some of the jurors believed one interpretation of the evidence, that he acted intentionally, and if the remainder of them believed the other interpretation, that he acted wantonly." *Id.* at 87. The appellant argued that this deprived him of his constitutional right to a unanimous verdict. *Id.* We disagreed, stating:

KRS 508.010 brings together two distinct culpable mental states (intent and wantonness manifesting extreme indifference to the value of human life) and punishes them equally under specified circumstances. Either mental state will support a conviction of assault in the first degree and punishment for such crime. The legal effect of the alternative conclusions is identical. There was ample evidence to support a verdict on either theory of the case. *We hold that a verdict can not (sic) be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense.*

*Id.* at 88 (emphasis added).

In *Boulder v. Commonwealth,* Ky., 610 S.W.2d 615 (1980), *overruled on other grounds, Dale v. Commonwealth,* Ky., 715 S.W.2d 227 (1986), we addressed the question of whether a defendant is denied a unanimous verdict when the jury is presented with alternate theories of guilt in the instructions, one of which is totally unsupported by the evidence. *Id.* at 617. We found that the appellant had been denied his right to a unanimous verdict, stating:

The instructions submitting count one (first degree assault) to the jury were improper. They provided alternative grounds for a finding of guilt-either that John intended to cause serious physical injury to "Cynthia" or that he was wantonly engaging in conduct which created a risk of death to "Cynthia." The state of the evidence, however, is such that it would be clearly unreasonable for a juror to believe that John's conduct was other than intentional. *Because we can not (sic) ascertain that all the jurors based their decision on the first theory, which is the only one supported by evidence, we can not (sic) say that the verdict was unanimous* as required by RCr 9.82(1) and *Wells v. Commonwealth,* Ky., 561 S.W.2d 85 (1978). Accordingly, we reverse the conviction of first degree assault and grant a new trial on that charge.

*Id.* at 617 (emphasis added).

In *Hayes v. Commonwealth,* Ky., 625 S.W.2d 583 (1981), we reversed the appellant's murder conviction on the same

grounds. The instructions presented to the jury allowed it to find the appellant guilty of murder if it believed that when the appellant shot the victim he either did so intentionally or was wantonly engaging in conduct which created a grave risk of death. *Id.* at 584. As there was no evidence of wanton conduct, we reversed the conviction because "[i]t would be clearly unreasonable for the jury to believe that appellant's conduct was other than intentional," which thereby denied the appellant his right to a unanimous verdict. *Id.* at 585.

■ In the case at bar, the Court of Appeals indicated that the instructions given on the first-degree trafficking charge were in error, but went on to hold that the error was harmless, stating:

> The evidence in this case, unlike in other cases, only lent itself to one reasonable interpretation—that Burnett possessed the crack cocaine with intent to sell. Both sides seem to concede that the evidence only could show possession with intent to sell. Thus, there could be no confusion by the jury in deciding on another method of trafficking.

*Burnett v. Commonwealth,* Ky.App., 1997–CA–002076–MR, *slip op* . at 8–9 (rendered January 15, 1999). However, the denial of a unanimous verdict—where the error is properly preserved—is not subject to a harmless error analysis.

According to the logic of the Court of Appeals, the jury had to have based its trafficking verdict on the possession-with-intent-to-sell method of trafficking because no other theory was supported by the evidence. This reasoning is contrary to *Wells, Boulder* and *Hayes.*

*Wells* holds that, when presented with alternate theories of guilt in an instruction, the Commonwealth does not have to show that each juror adhered to the same theory. Rather, the Commonwealth has to show that it has met its burden of proof under all of the alternate theories presented in the instruction. Once that is shown,

it becomes irrelevant which theory each individual juror believed. This result ensures that a defendant is convicted on proof beyond a reasonable doubt by all twelve jurors. *Boulder* and *Hayes* hold that, when the Commonwealth cannot show that it has met its burden of proof on all alternate theories presented to the jury in the instructions, then the defendant's right to a unanimous verdict has been violated. This is because it cannot be ascertained from the verdict form or otherwise from the record that all of the jurors voted to convict the defendant on a theory supported by the evidence.

The Court of Appeals' harmless error analysis is no more than a rewording of the standard of review applied to claims of error based on the trial court's denial of a motion for a directed verdict. The basis of the error in denying the appellant a unanimous verdict in both *Boulder* and *Hayes* was that the jury was presented with at least one alternate theory of the case that was totally unsupported by the evidence. This error will always be harmless under the Court of Appeals' analysis, because that analysis simply assumes that each juror did not convict on any alternate theory not supported by the evidence; rather, each juror voted to convict on a theory that was supported by the evidence. In other words, the Court of Appeals' analysis treats the erroneous jury instruction as mere surplusage and effectively overrules both *Boulder* and *Hayes.*

■ While the Court of Appeals' analysis is appealing on the surface, it is a misstep on a road best not traveled. The requirement that the Commonwealth must prove beyond a reasonable doubt every fact necessary to constitute the crime with which a defendant is charged is a basic and fundamental protection of the Due Process Clause of the United States Constitution. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Section 7 of the Kentucky Constitution and RCr 9.82(1) guarantee a defendant the right to a unanimous verdict. Construed

together, these constitutional provisions require that each juror's verdict be based on a theory of guilt in which the Commonwealth has proven each and every element beyond a reasonable doubt. From the record before us, it cannot be ascertained whether all of Burnett's jurors voted to convict him on a theory that was supported by the evidence; it cannot be ascertained that Burnett was afforded a unanimous verdict.

When a timely objection is made that a theory of guilt set forth in the instructions is not supported by the evidence, the burden is slight upon a trial court to see that the instructions conform to the evidence. The possible prejudice to basic constitutional rights of the defendant is great. It is clear that in this case the interests of judicial economy must yield to the restraints of the Kentucky and United States Constitutions. Therefore, we hold that Burnett was denied his right to a unanimous verdict and reverse the decision of the Court of Appeals and the judgment of the Jefferson Circuit Court and remand for a new trial.

COOPER, KELLER, and STUMBO, JJ., concur.

GRAVES, J., dissents by separate opinion, with LAMBERT, C.J., and WINTERSHEIMER, J., joining that dissent.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

A review of the evidence reveals that there was no prejudice by the jury instructions and that Appellant was not denied a unanimous verdict.

The circuit court instructed the jury on two offenses: Trafficking in a Controlled Substance in the First Degree and the lesser-included offense of Possession of a Controlled Substance in the First Degree. The Trafficking instruction read, in relevant part, that Appellant was guilty if he "had the cocaine in his possession with the intent to traffic in it." Additionally, the instructions defined "Trafficking" as "to manufacture, distribute, dispense, sell, transfer or possess with the intent to manufacture, distribute, dispense, sell, or transfer a controlled substance."

Even though Appellant asserts that the instruction defining "Trafficking," permitted the jury to convict on multiple theories of the offense which were unsupported by the evidence, there is no indication the jury considered multiple theories. In fact, there was no reason for the jury to consider multiple theories. The instruction defining "Trafficking" was a general, definition instruction, not an instruction on alternate theories. It was a correct statement of the law and it mirrors the statutory definition of "Traffic" contained in KRS 218A.010.

Furthermore, there was no prejudice resulting from any possible over breadth in the definition of "Trafficking." As the Court of Appeals aptly stated, "[w]hile the trial court's instructions on trafficking could have been more precisely crafted, this Court cannot conclude that any error in this regard was so prejudicial as to require reversal." The facts presented at trial support this conclusion.

Under the "harmless error" doctrine, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." RCr 9.24; *See also Commonwealth v. Donovan,* Ky., 610 S.W.2d 601 (1980); *Commonwealth v. Stamps,* Ky., 672 S.W.2d 336 (1984). Even errors involving constitutional rights may be found to be "harmless error." *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

Here the most logical inference from the evidence is that the entire jury based its verdict on the theory of possession with intent to sell. That particular theory was the one and only theory of the case presented. In determining that the jury re-

lied on that theory alone, the Court of Appeals found that the evidence in this case, unlike in other cases, only lent itself to one reasonable interpretation—that [Appellant] possessed the crack cocaine with intent to sell. In fact, at trial, the parties conceded that the evidence could only show possession with intent to sell. Thus, there could be no confusion by the jury in deciding on another method of trafficking. The total lack of evidence supporting an alternate theory does not require reversal.

Here, the facts indicate that the instruction did not create a "substantial possibility that the result would have been any different." *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969), *overruled in part, Blake v. Commonwealth*, Ky., 646 S.W.2d 718 (1983). Any error was harmless. RCr 9.24. The evidence was overwhelming that the drugs were possessed with the intent to sell, not any other theory. Therefore, even if the jury had been instructed more precisely, there is no indication that the verdict would have been any different. The instructions were not prejudicial and Appellant received a unanimous verdict.

Any error was harmless, and this Court should affirm the Kentucky Court of Appeals and the Jefferson Circuit Court.

LAMBERT, C.J., and WINTERSHEIMER, J., join this dissent.