Princess CARVER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–CA–001404–MR.

Court of Appeals of Kentucky.

Oct. 8, 2010.

Rehearing Denied Dec. 1, 2010.

Cicely Jaracz Lambert, Assistant Appellant Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Christian K.R. Miller, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, KELLER and LAMBERT, Judges.

## OPINION

ACREE, Judge:

Princess Carver appeals the June 17, 2008 judgment of the Jefferson Circuit Court convicting her of third-degree crimi-

nal child abuse and fourth-degree assault. She was sentenced to 365 days' imprisonment and a $500 fine for each charge, the sentences to be served concurrently. For the following reasons we affirm in part and reverse in part.

### Facts and procedure

Carver gave birth to A.H. on November 23, 2004, nearly three months premature. Although A.H. was slightly developmentally delayed, doctors agreed his development was normal considering his premature birth. On June 13, 2005, however, A.H.'s parents took the seven-month-old to the emergency room at Kosair Children's Hospital with life-threatening injuries. Diagnostic tests revealed A.H. was suffering from bleeding and swelling of the brain, spinal injuries, and retinal hemorrhaging. Medical personnel also discovered fractures to A.H.'s ribs which had begun to heal, in addition to fractures of the child's legs. Ultimately, severe injuries to A.H.'s brain, spine, and eyes resulted in permanent disability, including blindness, confinement to a wheelchair, and the inability to feed himself or play as a normal child.

Police and Child Services began investigating the cause of the child's injuries. Investigators and medical personnel interviewed his parents and other family members. A.H.'s treating physicians believed his injuries were most likely caused by a severe, repetitive acceleration-deceleration event, or shaking, though an expert witness for Carver would disagree at trial that shaking alone could cause such injuries. Carver admitted to shaking the baby three times on Sunday, June 12, 2005, but claimed the shaking was neither violent nor severe, and that she "just barely" shook the child at all.

Carver was arrested and charged with criminal child abuse and assault. Following a trial conducted in May and June of 2008, a jury convicted Carver of one count of third-degree criminal abuse, based on the shaking allegations, and one count of fourth-degree assault. Carver was acquitted of allegations that she abused A.H. by causing his legs to be fractured. This appeal followed.

On appeal, Carver asserts the trial court erred in four respects: (1) denying her motion to strike a juror for cause; (2) failing to define "physical injury" in the jury instructions; (3) providing jury instructions for the criminal abuse charge which presented multiple theories of guilt and therefore violated Carver's right to a unanimous verdict; and (4) assessing a fine despite finding Carver was indigent. We will address each argument in turn.

### Circuit court properly denied Carver's motion to exclude Juror #224935 for cause

The right to an impartial jury is fundamental to the American system of justice, and is protected by the U.S. and Kentucky Constitutions. *Riddle v. Commonwealth*, 864 S.W.2d 308, 310 (Ky.App.1993); *Fugett v. Commonwealth*, 250 S.W.3d 604, 612 (Ky.2008). Pursuant to Kentucky Rule(s) of Criminal Procedure (RCr) 9.36(1), "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." Furthermore, "Kentucky has long recognized that 'a determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination.'" *Fugett*, 250 S.W.3d at 613 (citing *Pendleton v. Commonwealth*, 83 S.W.3d 522, 527 (Ky.2002)).

■ In the instant case, the circuit judge chose not to exclude a juror who had previously had contact with the prosecuting attorney. That juror stated the Commonwealth's Attorney "took care of a case" for her approximately ten to fifteen years earlier. That juror later clarified that a family member had been involved in a domestic violence matter in which her stepbrother had been convicted of murder. She believed the case was handled fairly and believed justice was served. The juror also said no aspect of the previous case would affect her service in Carver's case.

■ Carver now attempts to characterize the juror's prior contact with the prosecutor as an attorney-client relationship. "The relationship of attorney-client is a contractual one, either expressed or implied by the conduct of the parties." *Daugherty v. Runner*, 581 S.W.2d 12, 16 (Ky.App.1978). Attorney-client relationships place important responsibilities upon the attorney and sometimes give rise to situations in which a potential juror should be excluded for cause. *Riddle*, 864 S.W.2d at 311 (citing *Daugherty*, 581 S.W.2d at 16, and *In re Gilbert*, 274 Ky. 187, 118 S.W.2d 535, 537 (1938)). This is especially true when the relationship is ongoing and the prospective juror indicates he or she would call upon the attorney again if legal counsel became necessary in the future. *Id.* Here, however, there was no attorney-client relationship. The prosecuting attorney never represented the juror. Instead, she prosecuted a case against the juror's family member on behalf of the Commonwealth. While the juror may have cooperated with prosecutors in the matter, there is no evidence of a contractual relationship between the prosecutor and the juror.

Further, the juror stated her experience with the prosecutor would not affect her decision making in Carver's trial. Her statement that she would not be biased,

combined with the lack of a prior attorney-client relationship and the lapse of ten to fifteen years between the first case and Carver's case, gave the circuit judge ample reason to believe the juror would be fair and impartial. It was not an abuse of discretion for the circuit court to decline to exclude this juror from the panel.

### The jury instructions regarding assault were not deficient for failing to define "physical injury"

■ Carver next argues the circuit court improperly failed to instruct the jury on the definition of "physical injury." Whether a trial court issued the proper jury instruction is a question of law. *Howell v. Commonwealth*, 296 S.W.3d 430, 432–33 (Ky.App.2009). Our review of the matter is therefore *de novo*. *Id.*

In the instant case, the jurors received the following instruction regarding fourth-degree assault:

[Y]ou will find the defendant, Princess Carver, guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

(A) That in this county, between the 10th day of June, 2005, and the 13th day of June, 2005, the defendant recklessly caused a physical injury to A.H. ... by shaking him and/or inflicting blunt force trauma;

AND

(B) The defendant's hands and/or a blunt object was a dangerous instrument as defined under Instruction No. 11[.]

Instruction No. 11, the definitional portion of the instructions, defined "dangerous instrument" and "serious physical injury," but not "physical injury."

■ It is the obligation of the circuit court to "instruct the jury on the whole law of the case." *Cannon v. Common-*

*wealth,* 777 S.W.2d 591, 593 (Ky.1989). To that end, *Kentucky Instructions to Juries* provides the following definition of physical injury: "substantial physical pain or any impairment of physical condition." 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 3.08. (4th ed.2005). Carver submitted a similar instruction to the circuit judge.

■ Erroneous jury instructions are presumed to be prejudicial. *Commonwealth v. Hager,* 35 S.W.3d 377, 379 (Ky. App.2000). It is therefore the Commonwealth's burden to show an erroneous instruction did not prejudice Carver. *Id.* However, as the Commonwealth points out, "[a] formal definition is not required to be included in jury instructions where the jury can understand the term without such a definition[,]" and any such omission will be deemed harmless error. *Id.* (citing *Hardin v. Savageau,* 906 S.W.2d 356, 358 (Ky.1995)).

Any error in failing to define the term in question was harmless. Carver has not argued that the jury was actually confused by the omission of a definition of "physical injury." Further, the term is common, and its meaning is plain. A reasonably intelligent juror would understand the phrase without definition.

Carver argues the Supreme Court's opinion in *Commonwealth v. Hager,* 41 S.W.3d 828 (Ky.2001), obligates this Court to conclude the omission of the definition of "physical injury" requires reversal. *Hager,* however, is clearly distinguishable from the instant case. In *Hager,* the Supreme Court found a multitude of problems with the jury instructions. Notable among those problems was that the jury convicted the defendant of fourth-degree assault without receiving any instruction on the elements of that charge. Further, the only evidence at trial was that the alleged victim had died following his en-counter with the defendant. In such a case, the Supreme Court ruled, assault is not the appropriate offense; homicide is.

The Supreme Court did note that, "if the jury had been instructed on the elements of fourth-degree assault, [the definitional instruction] also should have included the definition of 'physical injury,' KRS [Kentucky Revised Statutes] 500.080(13), which is the result element of that offense." *Hager,* 41 S.W.3d at 833. In the instant case, the jury was instructed on fourth-degree assault; only the result element, the definition of physical injury, was omitted. We agree with Carver that the definition of "physical injury" should have been included in the jury instructions. However, that determination is still subject to the harmless error analysis. *Hager,* 35 S.W.3d at 379. Because the Commonwealth has met its burden by showing no prejudice occurred to Carver as a result of this error, we conclude the error was harmless and affirm.

### The jury instructions regarding third-degree criminal abuse were not erroneous

■ Carver also argues the instruction on criminal abuse was erroneous, claiming, "[b]ecause of the inclusion of 'physical injury' in the definition of 'serious physical injury,' Ms. Carver submits the failure to define 'physical injury' when 'serous physical injury' is defined is erroneous, similarly to the error in the failure to define 'course of conduct,' a term used in the definition of 'stalk.'" Brief for Appellant, 18 (citation omitted).

The jury instruction regarding third-degree criminal abuse fully defined every necessary term. Despite the fact that the phrase "serious physical injury" contains the phrase "physical injury," defining the latter term was unnecessary. The former

term is an element of this offense, and the latter is not. Defining a term which is not necessary to the jury's decision would only serve to complicate and confuse matters, perhaps leading the jury to convict Carver of third-degree abuse upon a finding she only had caused A.H. physical injury rather than serious physical injury. The jury instruction was not erroneous in this respect.

### The jury instruction on third-degree criminal assault denied Carver a unanimous verdict

 "[A] defendant cannot be convicted of a criminal offense except by a unanimous verdict," pursuant to the Kentucky Constitution. *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky.2009) (citing Ky. Const. § 7; *Cannon v. Commonwealth*, 291 Ky. 50, 163 S.W.2d 15 (1942)). The right to a unanimous verdict is violated when "the jury is presented with alternate theories of guilt in the instructions, one of which is totally unsupported by the evidence." *Burnett v. Commonwealth*, 31 S.W.3d 878, 882 (Ky. 2000) (citing *Boulder v. Commonwealth*, 610 S.W.2d 615, 617 (Ky.1980) (*overruled on other grounds*)). In such a situation, it becomes the Commonwealth's obligation to demonstrate it met its burden of proof under each of the theories in the instruction; when the Commonwealth cannot make such a showing, the defendant's right to a unanimous verdict has been violated. *Id.* at 883. Carver argues the instructions on third-degree criminal abuse presented alternate theories, not all of which were supported by the evidence. We agree.

KRS 508.120(1) defines third-degree criminal abuse as follows:

A person is guilty of criminal abuse in the third degree when he recklessly abuses another person or permits another person of whom he has actual custody to be abused and thereby:

(a) Causes serious physical injury; or

(b) Places him in a situation that may cause him serious physical injury; or

(c) Causes torture, cruel confinement or cruel punishment;

to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

KRS 508.120(1). The harm element, or prohibited result, may be fulfilled one of three ways—by demonstrating the victim was caused 'serious physical injury;' experienced torture, cruel confinement, or cruel punishment; or was placed in a situation which had the potential to cause serious physical injury. Each form of harm to the victim is a separate theory of the offense. Cooper's model instruction reflects this. *See* 1 Cooper §§ 3.71A–3.73B.

The instruction given to the jury in the instant case, however, combined all three theories in one instruction. They required the jury to find Carver guilty if they believed:

(A) That in this county, between the 1st day of May, 2005, and the 13th day of June, 2005, the defendant recklessly abused A.H. . . . by shaking him;

AND

(B) That she thereby

(1) Caused serious physical injury to A.H. . . .;

OR

(2) Caused A.H. . . . to be placed in a situation which may have caused him serious physical injury;

OR

(3) That as a result thereof, A.H. . . . was subjected to torture, or cruel punishment;

AND

(C) That A.H. ... was at that time twelve (12) years of age or less.

(Emphasis added.) This instruction merely parroted the statutory language. The jury was permitted, then, to convict Carver of this offense if it believed the alleged abuse led to any one of the three harmful results to A.H. This situation is similar to that in *Burnett*, in which the Supreme Court observed,

> [U]nder the model instruction, the jury is instructed only as to those statutory methods of trafficking that are actually supported by the evidence. Whereas giving the jury the general, statutory definition of trafficking likely will result in the jury being presented with theories of guilt not supported by the evidence. This is exactly what happened in the case at bar.

*Burnett*, 31 S.W.3d at 882. The conviction of third-degree criminal abuse can stand only if the Commonwealth met its burden of proof on each theory. We turn now to an examination of the evidence.

The Commonwealth clearly met its burden with respect to the first form of harm enumerated in KRS 508.020, serious physical injury. As discussed earlier in this opinion, the evidence was unequivocal that A.H. suffered very serious physical injury, and indeed nearly died.

There was evidence that A.H. suffered torture or cruel punishment. The Supreme Court, in *Stoker v. Commonwealth*, 828 S.W.2d 619 (Ky.1992), determined that the beatings of four children with a wire coat hanger constituted torture or cruel punishment because evidence supported the conclusion "the nature of the beatings [was] cruel and indiscriminate, and far different in character from normal parental discipline." *Stoker*, 828 S.W.2d at 625. Another defendant was convicted of six counts of first-degree abuse for torture, cruel confinement, or cruel punishment, one count each for breaking a child's arm, three impact injuries to the child's abdomen, and two burn injuries. *Ratliff v. Commonwealth*, 194 S.W.3d 258 (Ky.2006). If each of these injuries could constitute torture or cruel punishment individually, certainly shaking A.H. to such an extent as to cause brain, retinal, and spinal hemorrhages would constitute torture or cruel punishment as well. Carver's own expert testified that the injury could have occurred up to seventy-two hours prior to A.H.'s admission to the hospital, and that it required very violent force. Given other examples of torture and cruel punishment in Kentucky case law, a jury could reasonably conclude A.H. experienced torture as well.

There was no evidence, however, that Carver caused A.H. to be placed in a potentially harmful situation. Although there is no clear rule for what constitutes placement in such a situation, the sequence of events presented at trial does not conform to examples in a leading treatise on Kentucky criminal law. George G. Seelig, *Kentucky Criminal Law*, § 9–6(b) (2d ed. 2008) ("Some situations would easily qualify, e.g., leaving an infant unattended in a hot automobile, permitting children to play with loaded weapons, etc. Others are far more difficult to judge, e.g., hauling an infant in an automobile without use of a safety seat, driving while intoxicated with children in the car, etc. There is no help in the case law on this subject"). The evidence, though vigorously controverted, was that Carver shook A.H. hard enough to cause massive brain swelling and hemorrhaging. While at least one witness testified that Carver had left A.H. alone on the front porch prior to taking him to the hospital, that was a separate incident from the alleged shaking, and could not have led to a conviction on this count. Because this theory was unsupported by the evidence, the Commonwealth failed to meet its bur-

den of proof and deprived Carver of her right to a unanimous verdict.

Carver also argues she was denied a unanimous verdict because Instruction No. 11, the definitions section, included a definition of abuse which was not supported by the evidence. This, too, is reminiscent of the situation in *Burnett*. In that case, the jury received instructions to find the defendant guilty if they believed he was trafficking in a controlled substance. *Burnett*, 31 S.W.3d at 881. In the definitional section of the instructions, "trafficking" was defined as follows: "to manufacture, distribute, sell or transfer a controlled substance." *Id.* While that was the correct statutory definition of trafficking, there was no evidence the defendant had been manufacturing a drug. The Supreme Court in *Burnett* held this was improper because the instructions presented a theory of the case not supported by evidence.

Here, Instruction No. 7 required jurors to find Carver guilty if they believed she had abused A.H. *by shaking him.* The definition section of the instructions defined abuse as "the infliction of physical pain, injury, or mental injury, *or the deprivation of services which are necessary to maintain the health and welfare of a person.*" (Emphasis added). This is the statutory definition of abuse as articulated in KRS 508.090(1), but Carver was not charged with abuse for depriving A.H. of medical attention.[1] The jury should not have been given an instruction which included this portion of the definition.

The Commonwealth urges us to find the erroneous definition was mere "surplusage," in accordance with the Supreme Court's opinion in *Tharp v. Commonwealth*, 40 S.W.3d 356 (Ky.2000). That opinion said, "inclusion of any definition of complicity in the instructions was surplus-

age, since the substantive instructions embodied the essentials of the definition." *Id.* at 364. Here, the Commonwealth argues we should find the definitional instruction mere surplusage because the substantive instruction properly laid out the elements of the crime.

This argument is based upon a misapplication of the case. The defendant in *Tharp* did not raise the argument that she had been denied a unanimous verdict. Her disagreement with the definitional instruction arose from a dispute about whether it accurately reflected the statutory definition of complicity. The Supreme Court simply found the definitional instruction was repetitive of the substantive instruction; it did not rule—nor was it asked to—that the definition could stand even though it presented theories which were unsupported by the evidence.

Further, the Court in *Burnett* held that, when there is an issue of unanimous verdict, any error is not subject to harmless error analysis. *Burnett*, 31 S.W.3d at 883. A finding in the instant case that the definitional instruction regarding abuse was mere surplusage amounts to a finding that the error was harmless, which is not allowed. The Commonwealth was still required to prove every theory presented in the instructions, including the definitional instruction, beyond a reasonable doubt. It failed to do so and, therefore, Carver was deprived of the right to a unanimous verdict in this respect as well.

### *Imposition of the fines is not palpable error*

■ Carver next objects to the $500 fines imposed upon her for each conviction, for a total of $1,000, pursuant to KRS 534.040(2). KRS 534.040(4) prohibits the

---

1. The instruction did omit that portion of the statute which clearly applied only to mentally

or physically disabled adults in the care of another person.

imposition of fines upon a defendant found to be indigent under KRS Chapter 31. Carver was found indigent in accordance with that chapter and a public defender was appointed to represent her.[2] Carver raises this issue pursuant to RCr 10.26, which permits this Court to review a matter which was not raised before the trial court:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

RCr 10.26. Because Carver did not object to the imposition of a fine before the circuit court, our review can only be for palpable error.

Ordinarily, we would prohibit imposition of fines when the issue was properly preserved. *Simpson v. Commonwealth*, 889 S.W.2d 781, 784 (Ky.1994) (holding that because the defendant was represented by a public defender at sentencing, the circuit court must have found him indigent; accordingly, "imposition of any fine was inappropriate[.]").

Even upon review for palpable error, we would reverse the circuit court's imposition of a fine upon an indigent person. Assessment of a fine would be a ruling in clear contravention of the law. The Commonwealth, however, argues Carver has waived her right to object to the fines because her trial counsel asserted to the circuit judge that fines were appropriate. Here, Carver's trial counsel did not simply fail to raise the argument before the circuit judge; instead, her attorney asserted to the circuit court that a fine could, in fact, be imposed. This conversation occurred before the sentencing phase of trial, and affected the instructions the circuit judge gave to the jury. Later, at Carver's sentencing hearing, her trial counsel stated "no position" on the issue. This was apparently a strategic decision—the possibility she would receive only a fine was a risk she was willing to take. We presume Carver and her attorney knew better the degree of Carver's indigence and ability to accumulate sufficient funds to pay a fine under such circumstances. Now that the fine has been imposed, however, Carver wishes to invoke the statute which would ordinarily have prohibited it in the first place. The circuit judge did not commit palpable error in imposing a fine upon Carver in light of her attorney's representations to the court.

The circuit court properly imposed the fines and refused to excuse Juror # 224935 for cause. Although the failure to define "physical injury" was error, the error was harmless. We therefore affirm the circuit court on all those issues. With respect to the jury instruction for criminal abuse, however, we reverse. The instructions deprived Carver of the right to a unanimous verdict by presenting alternate theories of

---

2. The form for the Order and Affidavit of Indigency contains the following standard language: "Based on the above information, Sworn to before the Court, IT IS HEREBY ORDERED that the above named defendant ☐ is ☐ is not deemed indigent under K.R.S. Chapter 31. By so qualifying, and if requested above, the affiant is qualified for services as provided by KRS Chapter 31." The circuit judge responsible for making this determina-

tion signed the form, but did not indicate whether she found Carver indigent by checking the proper box. However, because Carver requested and was granted the appointment of counsel, we presume she was also found indigent. *See West v. Commonwealth*, 887 S.W.2d 338, 342 (Ky.1994) ("implicit in the trial court's order allowing the Public Defender to see [the defendant] must be a finding that [the defendant] was indigent.").

guilt, not all of which were supported by the evidence. We remand this matter for proceedings consistent with this opinion.

ALL CONCUR.