**Robert Dwayne SMITH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2011–SC–000285–MR.

Supreme Court of Kentucky.

March 22, 2012.

Rehearing Denied June 21, 2012.

Daniel T. Goyette, Louisville Metro Public Defender, James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General, John Paul Varo, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Robert Dwayne Smith, appeals as a matter of right[1] from a judgment entered by the Jefferson Circuit Court convicting him of first-degree robbery and of being a first-degree persistent felony offender, and sentencing him to thirty-two years' imprisonment. Smith's appeal presents two issues: (1) that the first-degree robbery instruction violated the unanimous verdict requirement by including a theory not supported by the evidence; and (2) that a surplus provision was included in the judgment which could be construed as imposing fines and costs against him, and that the provision should therefore be vacated because he is indigent.

While the first-degree robbery instruction did include a theory unsupported by the record, because there is no possibility that any juror voted to convict him under the unsupported theory, the error was harmless pursuant to *Travis v. Commonwealth*, 327 S.W.3d 456 (Ky.2010). Further, we find that the surplus language contained in the judgment which states, "Defendant's court costs and fines are credit time served" has no readily determinable meaning and serves no perceptible purpose. Thus, we affirm Smith's conviction and sentence, but vacate the surplus provision and remand for entry of a new judgment excluding the provision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 26, 2010, Smith and his two accomplices, Sharon Smith and Karmisha Hughes, robbed a small grocery store. In

1. Ky. Const. § 110.

executing the robbery, Smith and Hughes entered the store, while Sharon remained outside to act as the lookout. Once inside, Hughes went toward the back of the store while Smith approached the clerk and demanded the money from the cash register. When the clerk failed to respond to his demand, Smith struck her with his fists and with a flashlight. The robbers took the cash register and fled the store. The police soon tracked down the trio and arrested them.

Following their arrest, Smith gave a statement in which he confessed to robbing the store and striking the clerk with his fists, but did not admit to using any kind of implement in the beating. Sharon and Hughes pled guilty and testified against Smith at trial, identifying Smith as the one who had attacked the clerk. The clerk also testified. She identified Smith as her attacker, and stated that he struck her with some implement, which other evidence established was a flashlight.

At the conclusion of the cases-in-chief, the jury found Smith guilty of first-degree robbery and of being a first-degree persistent felony offender and recommended a sentence of thirty-two years. The trial court entered judgment in accordance with the verdict. This appeal followed.

## II. THE FIRST–DEGREE ROBBERY INSTRUCTION

Smith first contends that the first-degree robbery instruction denied him his right to a unanimous verdict because the instruction included an option that allowed the jury to convict him if they believed that either Sharon or Hughes used force against the clerk. Smith argues that this prevented a unanimous verdict because a juror could have convicted him based on that theory despite there being absolutely no evidence that Sharon or Hughes had used force. Smith concedes that the error

was not raised at trial, and so we will examine his argument under the manifest injustice standard contained in RCr 10.26.

Before we address the issue, a caveat is in order to clarify a matter that was argued in the parties' briefs respecting this Court's role in reviewing unpreserved error. Although he acknowledged the erroneous instruction issue was not raised at trial, in his opening brief, Smith did not specifically request palpable error review. Therefore, citing to *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky.2008), the Commonwealth argued in its response brief that we should not address the issue at all. *Shepherd* holds that, absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request was made and briefed by the appellant. Smith did, at least, brief the issue, and we accordingly opt to address the matter on the merits, though we do not retreat from the *Shepherd* rule; rather, we continue to reserve our discretion to invoke the rule in any particular case. Responding to the Commonwealth's invocation of the *Shepherd* rule, Smith's reply brief argues that the *Shepherd* rule is incorrect because there is "no court rule demanding this action" and "that it is unreasonable for the Commonwealth to claim the Court may create an appellate policy by means of case law"; that "RCr 10.26 cannot be justified under any reading of the constitution" and that therefore "[t]his Court should use this case to abrogate the [palpable error] rule and to announce that there is only one standard of review— error of record that likely influenced the result of the trial"; and that RCr 9.54 (requiring objection to erroneous jury instructions) "cannot be used to preclude [appellate] review of jury instructions" and "[t]he Court must declare that instruction

issues will be reviewed under the regular standard regardless of RCr 9.54(2)."

■■ Smith raised these points for the first time in a reply brief. Under *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky.App.1979), "[t]he reply brief is not a device for raising new issues which are essential to the success of the appeal." Nevertheless, for the benefit of appellate counsel we briefly note that the preservation of error rule is an indispensable underpinning of our adversarial criminal justice process. If unpreserved error, which we review for manifest injustice, were to be reviewed under the same standard as preserved error, which we review for whether the error substantially swayed the verdict, *see Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009); *see . also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (A trial error involving the denial of a federal constitutional right is harmless when it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."), a trial counsel's principal motive for bringing reversible error to the trial court's attention would be eliminated. Moreover, a decisive incentive *not* to bring error to the trial court's attention would be created. Indeed, under Smith's appellate counsel's model rule of review, bringing reversible error to the trial court's attention could, in some instances amount to ineffective assistance because the trial judge's timely correction of such error would deprive trial counsel's client of a guaranteed reversal, a do-over in the event of an unfavorable verdict. Counsel's suggested rule would, in practice, be unworkable. By deliberate design trial attorneys would remain mute rather that bring reversible errors to the trial court's attention, and the unpreserved error, like preserved error, would be reviewed under the "substantially swayed" standard. Retrials would thereby abound.

Accordingly, our preservation of error rules are integral to the efficient functioning of our entire process, and RCr 10.26, in the meantime, functions to assure that no defendant will suffer a manifest injustice because of unpreserved error.

■ We return to the substantive issue at hand—whether extraneous language in the first-degree robbery instruction denied Smith his right to a unanimous verdict. As noted, following their arrests Sharon and Hughes pled guilty and testified against Smith at trial, identifying Smith as the one who had attacked the clerk. The clerk also testified and identified Smith as her attacker. The Commonwealth's theory of the case was that Smith alone was the attacker. The prosecutor stressed this point in both the opening statement and the closing argument. Likewise, Smith never suggested that either Sharon or Hughes had attacked the clerk.

Despite the lack of any evidence that anyone other than Smith had used force against the clerk, the first-degree robbery instruction stated as follows:

> You will find the defendant, Robert Smith, guilty of Complicity to Robbery in the First Degree if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in Jefferson County on or about the 26th day of July, 2010, acting alone or in complicity with others, he stole or attempted to steal money from A–Z Grocery.
>
> AND
>
> B(1) That in the course of doing so, and with intent to accomplish the theft, he *or one of his complicitors* caused physical injury to [the clerk], who was not a participant in the crime by striking her.
>
> OR
>
> B(2)(a) That in the course of doing so, and with intent to accomplish the theft,

he *or one of his complicitors* used or threatened the use of physical force upon [the clerk] with a flashlight;

AND

That said flashlight was a dangerous instrument as defined in Instruction No. 3.

(emphasis added).

As can be seen, the instruction provides that Smith could be convicted of first-degree robbery if the jury believed Sharon or Hughes used force against the clerk, even though no evidence whatsoever was presented at trial to support that theory. Smith contends that including this option in the instructions denied him his constitutional right to a unanimous verdict.

■■■ The situation where multiple theories of a crime are presented in a single instruction has become known as a "combination instruction." *See, e.g., Johnson v. Commonwealth*, 12 S.W.3d 258, 265 (Ky. 1999). We have addressed this type of situation on several occasions since the late 1970's. For example, in *Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky.1978), we held that "a verdict cannot be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense." In other words, multiple theories of the same offense can be combined so long as there is sufficient evidence of each. This is because, no matter which theory they believed, all the jurors convicted under a theory supported by the evidence and all the jurors convicted the defendant of the same offense. *Travis*, 327 S.W.3d at 460.

We addressed the situation where there is insufficient evidence supporting one of the theories in both *Boulder v. Commonwealth*, 610 S.W.2d 615, 617 (Ky.1980)[2] and *Hayes v. Commonwealth*, 625 S.W.2d 583, 584–85 (Ky.1981). In each case, we found the combined instruction erroneous because it permitted the jury to convict on a theory unsupported by evidence. *See Boulder*, 610 S.W.2d at 617 ("They provided alternative grounds for a finding of guilt—either that [the defendant] intended to cause, serious physical injury to [the victim] or that he was wantonly engaging in conduct which created a risk of death to [the victim].' The state of the evidence, however, is such that it would be clearly unreasonable for a juror to believe that [the defendant's] conduct was other than intentional."); *Hayes*, 625 S.W.2d at 585; *Travis*, 327 S.W.3d at 460.

Thus, *Boulder* and *Hayes* established that instructing on theories insufficiently supported by evidence is error. Twenty years after that pair of cases, we held in *Burnett v. Commonwealth*, 31 S.W.3d 878, 883 (Ky.2000),[3] that when this type of error occurs and is preserved, it must always cause the conviction to be reversed. *Burnett*'s reasoning was based on the fundamental nature of one's right to a unanimous verdict. *See Travis*, 327 S.W.3d at 463. In *Travis* we retreated from the *Burnett* rule, stating:

> While holding true to that underlying principle, we now step back from our position in *Burnett* because the error resulting only from superfluous language does not present a pure unanimity problem. On the contrary, such flawed instructions only implicate unanimity if it is reasonably likely that some members of the jury actually followed the erroneously inserted theory in

**2.** Overruled on other grounds by *Dale v. Commonwealth,* 715 S.W.2d 227 (Ky.1986).

**3.** Overruled by *Travis,* 327 S.W.3d 456.

reaching their verdict. If that can be shown, then a unanimous verdict has been denied and the verdict must be overruled. *However, if there is no reasonable possibility that the jury actually relied on the erroneous theory—in particular, where there is no evidence of the theory that could mislead the jury—then there is no unanimity problem.* Though such a case presents an error in the instructions, namely, the inclusion of surplus language, the error is simply harmless because there is no reason to think the jury was misled. To the extent *Burnett* mandates reversal in this latter situation, it is now overruled.

*Id.* at 463 (emphasis added).

Because of the complete absence of any evidence that Sharon or Hughes used force against the clerk, there was absolutely no reason for any juror to believe that the alternative could have occurred. If some jurors even considered the possibility that Sharon or Hughes used force at all during their deliberations, they undoubtedly summarily rejected the possibility. Accordingly "there is no reasonable possibility that the jury actually relied on the erroneous theory," and, it follows, we would find the error harmless even if it had been preserved.[4] As such, no manifest injustice occurred so as to entitle Smith to relief under RCr 10.26.

### III. THE REFERENCE TO FINES AND COSTS IN THE JUDGMENT

■ Smith also challenges the inclusion of the language "Defendant's court costs and fines are. credit time served" in the final judgment. He contends that the provision may be interpreted to mean "that the equivalent of the fine and costs are [sic] to be subtracted from the 261 day jail time credit awarded at sentencing or some other credits[.]" He alleges that he "faces the danger of having the Corrections Department relying on this nebulous statement in its calculations of his actual time to serve ... [and that] Corrections may charge off the fine against jail credit or subtract it from the credits calculated upon receipt into the state corrections system." While Smith did not object to this language in the. judgment at trial, he may raise this issue on appeal. *See Travis,* 327 S.W.3d at 459.

Subsection (4) of KRS 534.040 provides that "[f]ines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." Similarly, KRS 23A.205(2) provides for the mandatory imposition of court costs "unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs, in the foreseeable future." KRS 453.190(2) defines a poor person as "a person who is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing," *See Maynes v. Commonwealth,* 361 S.W.3d 922 (Ky.2012) (distinguishing between "indigent" and "poor person.").

While it does not appear that the trial court formally made the necessary findings to establish whether Smith was either an "indigent" not subject to fines under KRS 534.040 or a "poor person" not subject to costs under KRS 23A.205(2), the judgment does not specifically impose either penalty,

---

4. Smith attempts to distinguish *Travis* on the basis that' in *Travis* the discussion was within the context of a PFO instruction. However, it is clear that the holding in *Travis* was likewise intended to apply to the guilt phase instructions. *Boulder, Hayes,* and *Burnett,* the principal cases discussed in *Travis,* were all guilt phase instruction cases.

which implies that the trial court determined that he was not eligible for either punishment. Further, at the time of trial, Smith was receiving the services of a public defender, was granted the right to appeal *in forma pauperis,* and the Commonwealth does not contest Smith's allegation that he is not subject to payment under either statute. Assuming that we are correct that everyone is in agreement that Smith is not eligible to be assessed either fines or court costs, there was no reason to include any reference to them in the judgment.

Moreover, there is no method by which a trial court may indirectly impose fines and court costs against a defendant by reducing his pretrial jail time credit. Consequently, any attempt by a trial court to do so would be improper.

Given, in the context of this case, the meaningless nature of the phrase "Defendant's court costs and fines are credit time served," it is highly unlikely that the provision poses a threat to Smith's pretrial credit time by actions of the Department of Corrections. The provision seems to be pointless surplus language that serves no apparent utility. However, lest at some future date, it be applied to some purpose detrimental to Smith, we vacate the language and order that it be stricken from the judgment.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed in part, vacated in part, and the cause is remanded for entry of a judgment excluding the surplus language as identified herein.

All sitting. All concur.